J-E02006-18

2019 PA Super 176

COMMONWEALTH OF PENNSYLVANIA　　:　　IN THE SUPERIOR COURT OF
　　　　　　　　　　　　　　　　:　　　　　PENNSYLVANIA
　　　　　Appellant　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
RICHARD HOLSTON　　　　　　　　:　　No. 223 EDA 2016

Appeal from the Order December 21, 2015
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0005331-2015

BEFORE:　GANTMAN, P.J., BENDER, P.J.E., PANELLA, J., SHOGAN, J.,
　　　　　LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., and
　　　　　McLAUGHLIN, J.

OPINION BY SHOGAN, J.:　　　　　　　　　　**FILED MAY 31, 2019**

The Commonwealth appeals from the order dismissing all charges filed against Appellee, Richard Holston, the proprietor of a business known as Summerdale Mills, which is a drapery and upholstery sales and manufacturing business that performed work for the Risoldi family. For the reasons that follow, we affirm.

We summarize the underlying history of this case as follows. The Risoldi family experienced multiple fires in their residences, resulting in the filing of numerous claims to insurance companies. Specifically, there were three fires, one in June of 2009, another in August of 2010, and the third in October of 2013. Insurance claims were made for damages suffered in each of the fires, including damage to window treatments provided by Summerdale Mills.

Following the third fire, the insurer, AIG, refused to pay the claim for damage to the window treatments unless the Risoldis produced documentation that the window treatments had been replaced after the second fire and submitted the cost of that replacement. The Risoldi family alleged that receipts were lost in the fire and that Summerdale Mills did not have copies of the receipts.

Ultimately, a grand jury was convened to investigate whether the Risoldi family and their associates were involved in submitting fraudulent insurance claims.[1] Appellee was subpoenaed to testify before the grand jury and to produce records of all business between Summerdale Mills and members of the Risoldi family including checks, invoices, and estimates for replacement of fabrics due to fires at the Risoldis' residences.[2]

On September 16, 2014, Appellee testified before the grand jury. On October 8, 2014, a search warrant was executed at Summerdale Mills. At that time, numerous documents were recovered pertaining to work performed by Summerdale Mills for the Risoldi family.

Also in October of 2014, after the execution of the search warrant, Mark Goldman, a private investigator for the Risoldi family, delivered a binder of

_____

[1] We note that after the Bucks County District Attorney determined he had a conflict of interest, the matter was referred to the Office of the Attorney General.

[2] Appellee became the owner of Summerdale Mills, which has been in business for over thirty-five years, in January of 2014. The previous owner was Abraham Reichbach, Appellee's brother-in-law. Prior to assuming ownership of Summerdale Mills, Appellee supervised the business's fabrication shop.

documents to AIG purporting to contain records from Summerdale Mills related to the window treatments. Some of the records misspelled the name of the company and reflected amounts paid to Summerdale Mills without description of the work or service provided.

On December 19, 2014, the Thirty-Fifth Statewide Investigating Grand Jury[3] issued a presentment recommending that charges be filed against Appellee, Claire Risoldi, Carl Risoldi, Carla Risoldi, Sheila Risoldi, Tom French, and Mark Goldman in connection with an alleged multi-million-dollar insurance-fraud scheme. Appellee was charged with one count each of corrupt organizations, insurance fraud, criminal conspiracy, obstruction of the administration of law, and perjury.[4]

On February 4, 2015, the Commonwealth filed a petition seeking to file bills of information without a preliminary hearing, and on March 3, 2015, Judge Gavin denied the Commonwealth's petition. A preliminary hearing ultimately was held before Magisterial District Judge C. Robert Roth on August 19, 2015. At the conclusion of the preliminary hearing, the charges of insurance fraud, criminal conspiracy, obstruction of the administration of law,

---

[3] We observe that, due to the prominence of the Risoldi family in Bucks County politics, the entire Bucks County Court of Common Pleas recused itself from the matter, and Senior Judge Thomas G. Gavin of Chester County was appointed to preside over the case.

[4] 18 Pa.C.S. §§ 911, 4117(a)(2), 903(c), 5101, and 4902(a), respectively.

and perjury were held for court. The charge of corrupt organizations was dismissed.

On October 2, 2015, Appellee filed a petition for writ of *habeas corpus*. On October 15, 2015, a hearing on the petition was held before Judge Gavin, and on December 21, 2015, Judge Gavin granted *habeas* relief and dismissed all charges against Appellee. The Commonwealth filed this timely appeal. Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925. On November 20, 2017, a panel of this Court affirmed the order of the trial court. The Commonwealth then filed an application for reargument *en banc*, which we granted. This matter is now ripe for our disposition.

Before we address the merits of the Commonwealth's appeal, we must consider whether we have jurisdiction. We note that this matter involves an appeal from a pretrial order. Generally, when criminal charges are dismissed prior to trial, the Commonwealth can simply refile the charges and, therefore, an appeal from such an order is interlocutory. ***Commonwealth v. Price***, 684 A.2d 640, 641 (Pa. Super. 1996) (citing ***Commonwealth v. Waller***, 682 A.2d 1292 (Pa. Super. 1996)). However, under Pennsylvania Rule of Appellate Procedure 311(d), in criminal cases the Commonwealth has a right to appeal an interlocutory order if the Commonwealth certifies that the order will terminate or substantially handicap the prosecution. ***Commonwealth v. Flamer***, 53 A.3d 82, 86 n.2 (Pa. Super. 2012). Specifically, Rule 311(d) provides as follows:

- 4 -

> In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 311(d). The rule does not explicitly limit the Commonwealth's right of interlocutory appeal to any particular class of pretrial orders. Rather, it indicates that the Commonwealth may take an appeal as of right "under the circumstances provided by law." *Id*.

Here, the record reflects that the Commonwealth has included in its notice of appeal a statement that the order on appeal dismissed all charges and terminated the prosecution. Notice of Appeal, 1/7/16. Therefore, pursuant to Pa.R.A.P. 311(d), this Court has jurisdiction to hear this appeal from the trial court's interlocutory order. *See Commonwealth v. Jackson*, 10 A.3d 341, 344 n.2 (Pa. Super. 2010) (noting the Superior Court may not inquire into the grounds for the Commonwealth's good faith certification) (citing *Commonwealth v. Moser*, 999 A.2d 602, 605 n.2 (Pa. Super. 2010)). We thus turn to the claims raised in this matter.

The Commonwealth presents the following issue for our review:

I. WHETHER THE LOWER COURT'S DISMISSAL OF CHARGES WAS A MANIFEST ABUSE OF DISCRETION WHERE THE COMMONWEALTH ESTABLISHED A *PRIMA FACIE* CASE FOR ALL CHARGES AND THE COURT'S RESOLUTION WAS CONTRARY TO THE STANDARDS FOR ANALYIZING [sic] SUFFICIENCY OF EVIDENCE TO SUPPORT A *PRIMA FACIE* CASE?

Commonwealth's Brief at 4.[5] The Commonwealth contends that the trial court's order dismissing all charges was in error because the Commonwealth allegedly presented sufficient evidence to establish a *prima facie* case for each of the offenses dismissed.

The evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law; this Court's review is plenary. **Commonwealth v. Karetny**, 880 A.2d 505, 513 (Pa. 2005) (citing **Commonwealth v. Huggins**, 836 A.2d 862 (Pa. 2003)). Indeed, the trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pretrial, *prima facie* burden to establish the elements of a charged crime. **Id**.

In **Huggins**, our Supreme Court explained:

At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. The evidence need only be such that, if presented at trial and accepted as true, the judge would be

_____

[5] We note that, excluding tables and appendices, the Commonwealth's brief is forty-seven pages long. Pursuant to Pa.R.A.P. 2135, a principal brief is limited to 14,000 words, and when the brief exceeds thirty pages, the appellant must certify with the appellate court that the brief complies with the word limitation. **See** Pa.R.A.P. 2135(d) (stating that "[a]ny brief in excess of the stated page limits shall include a certification that the brief complies with the word count limits"). The Commonwealth's brief includes a certification of compliance indicating that the word count for the entire document is 10,652 words.

warranted in permitting the case to go to the jury. Moreover, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case."

*Id*. at 866 (citations omitted).

However, we have also noted that "suspicion and conjecture are not evidence and are unacceptable as such." ***Commonwealth v. Packard***, 767 A.2d 1068, 1071 (Pa. Super. 2001). "[W]here the Commonwealth's case relies solely upon a **tenuous inference** to establish a material element of the charge, it has failed to meet its burden of showing that the crime charged was committed." ***Commonwealth v. Wojdak***, 466 A.2d 991, 997 (Pa. 1983) (emphasis in original).

<u>PERJURY</u>

The Commonwealth first argues that the trial court erred in determining that the Commonwealth failed to present sufficient evidence to support a *prima facie* finding that Appellee committed the crime of perjury. Commonwealth's Brief at 18-33. Specifically, the Commonwealth asserts that it "charged [Appellee] with perjury under subsection (a) because he made false statements under oath during his grand jury testimony which were material to the [Risoldi family's] insurance claim related to window treatments and the grand jury's investigation of that claim." *Id*. at 19-20. The Commonwealth further contends:

> The basis of the perjury charge was [Appellee's] testimony that he could not provide documentation related to the Risoldi

window treatments because Summerdale Mills had gone "paperless" in 2006 and his computer hard drive containing the electronic documents as well as the back-up system had failed. Specifically, [Appellee] testified before the grand jury on September 16, 2014, that he "looked through any of the boxes that had files that I could find to try to comply with the subpoena.["] In this purportedly exhaustive search, [Appellee] produced only 68 pages of documents which consisted solely of diagrams related to window treatment fabrication. He further acknowledged that he did not produce any canceled checks, invoices, estimates, or similar documents.

On October 9, 2014, members of the [Office of the Attorney General] executed a search warrant at Summerdale Mills. During the search, over 450 pages of documents related to transactions with the Risoldi's [sic] were recovered from Summerdale Mills including 189 pages of Risoldi documents recovered from an office with [Appellee's] own name on the door. These documents included, *inter alia*, invoices, work orders, estimates, shipping logs, payment logs, and installation logs for the Risoldi's [sic]. Significantly, among the documents provided to the [Office of the Attorney General] pursuant to the subpoena were copies of documents subsequently located *among the same files* as documents not produced.

Viewed in the light most favorable to the Commonwealth as required, it is reasonable to infer that [Appellee] selected a small portion of documents to produce while holding the majority of them, notably the most relevant documents, [sic] back. It unequivocally establishes that [Appellee] knowingly provided false testimony concerning the number of documents he was able to recover.

*Id*. at 20-21 (citations to reproduced record omitted) (emphasis in original).

Thus, the Commonwealth bases its argument on the allegation that Appellee was untruthful in his testimony regarding the production of documents.

The Crimes Code defines perjury, in relevant part, as follows:

**§ 4902. Perjury.**

**(a) Offense defined. —** A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

**(b) Materiality. —** Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

* * *

**(f) Corroboration. —** In any prosecution under this section, except under subsection (e) of this section, falsity of a statement may not be established by the uncorroborated testimony of a single witness.

18 Pa.C.S. § 4902.

This Court has explained that perjury is more than false testimony:

The crime of perjury is not synonymous with "false testimony". In order to constitute the crime of perjury several elements must be present, among which is the requirement that the false testimony must have been material to the proceeding at which it was made. The issue as to whether false testimony is material to the proceeding is a question of law.

A false statement, made under oath, is material "if it could have affected the course or outcome of the proceeding." Materiality is to be determined as of the time that the false statement was made. Furthermore, the test of the materiality of a false statement is whether it can influence a fact-finder, not whether it does. The fact that the false testimony was unnecessary to accomplish the end in view will not render it immaterial.

***Commonwealth v. Lafferty***, 419 A.2d 518, 521-522 (Pa. Super. 1980)

(citations omitted). We have determined accordingly that the elements of

perjury are established if: 1) in an official proceeding; 2) under oath or affirmation to tell the truth; 3) the defendant made a false statement knowing it to be false; and 4) the statement was material to the matter then at issue. *Id*.

The trial court set forth the following findings of fact pertaining to Appellee's grand jury testimony:

13. [Appellee] appeared before the 35th Statewide Investigating Grand Jury on September 16, 2014, pursuant to a subpoena which also directed the production of documents.[3]  Pg. 3.

> [3] The following findings are from the transcript of that proceeding.  As [Appellee's] testimony is the basis of the perjury charge, it is no longer subject to the secrecy provisions of Grand Jury testimony.

14. Exhibit C-147 is the transcript of [Appellee's] appearance before the 35th Statewide Investigating Grand Jury on September 16, 2014 and Exhibit C-200 is the audio recording of his appearance.

15. The property at 8101 Frankford Avenue, Philadelphia has signage for both Philadelphia Draperies, LLC and Summerdale Mills. Pg. 4.

16. [Appellee] is the owner of Philadelphia Draperies, LLC.  Pg. 5

17. Philadelphia Draperies, LLC currently does business as Summerdale Mills.  Pg. 5

18. [Appellee] has owned the business (Summerdale Mills) since 2014.  Pg. 5.

19. His brother-in-law, Abraham Reichbach, was the prior owner of Summerdale Mills.  Pg. 5

20. [Appellee] knows Claire Risoldi who was a customer of Summerdale.  Pg. 8.

21. He first met her in 2013.  Pg. 8.

22. After the 2010 fire at the Claire Risoldi residence, he did a portion of the (restoration/replacement) work, not the entire house.  Pg. 9, l. 14 - pg. 10, l. 7.

23. Pursuant to the subpoena, he produced 68 pages of documents.  See Exhibit C-86.  Pg. 11.

24. The produced items were essentially fabrication diagrams.

25. [Appellee] did not produce cancelled checks, invoices, etc. as, "I don't have them."  Pg. 12.

26. He didn't have them as

> "Well, our computer hard drive, which he had everything financial, which had all the orders, invoices, everything, that hard drive died at the end of April, beginning of May of this past year.  And then we called in several companies to try and restore it.  And they were unable to do that.  And then we sent it out to a company to see if they could restore it.  They recently responded that it was not able to be recovered.  And that was all the data that had been passed on to me from 2006 on.  We relied on that."
> Pg. 12, l. 24 - Pg. 13, l. 9.

27. He does not have access to the pre-January 2014 financial records as they were with the prior owner.  Pg. 15.

28. [Appellee] requested access to the records but the prior owner did not provide them.  Pg. 15 -16.

29. He rented space in the Summerdale Mills facility between 2010-2013.  Pg. 17.

30. His brother-in-law gave him the business (Summerdale Mills). Pg. 18.

31. [Appellee] does not have access to [previous] Summerdale Mills bank accounts as he opened new accounts.  Pg. 18.

32. He did not speak to the former owner or ask questions of him, as per "pg. 21, ll. 13-15."

> "Q Hey, Abe, do you remember who did what for Mrs. Risoldi's fire when we were replacing the drapes for her?
> A No. I didn't.
> Q Is there a reason you didn't ask him about that?
> A Yes. Because I don't want to testify secondhand something that someone tells me that I don't know that I wasn't a witness to.
> Q You did not even bother asking him?
> A I did not."
> Pg. 21, ll. 7-17.

33. He was at Claire Risoldi's residence in October 2013 to check the installation of material. This was approximately a week before the 2013 fire. Pg. 23.

34. [Appellee] was unaware of the 2009 fire at Claire's residence until the fire of October 22, 2013. Pg. 23.

35. When he did work for Summerdale Mills, he did not know the identity of the customer as,

> "Q And so you are saying, from these records, you won't be able to identify which of it pertained to Mrs. Risoldi's order?
> A No. I can't.
> Q Why is that?
> A In this business - and I do it now - I don't give my workrooms the customers' names because I don't went [sic] them soliciting work or going and giving them to another decorator. So it was always a work order number. And I can - it would accumulate, like I said, by work order number when we were doing what we worked on. And then we would invoice Summerdale."
> Pg. 27, ll. 2-14.

36. [Appellee] is aware that Claire Risoldi is in the process of rebuilding her house. Pg. 35.

37. He does not know if Summerdale Mills has given Claire an estimate. Pg. 36.

38. Following the fire of October 22, 2013, the drapes from Claire's home were taken to Summerdale Mills (for storage). Pg. 44.

39. The drapes were returned to the Risoldi's. Pg. 48.

40. [Appellee] spoke to Claire after the fire about a new order. Pg. 52.

41. Claire spoke to his sales person, Beata. Pg. 35.

42. He did not know if Beata gave Claire any replacement pricing. Pg. 36.

Trial Court Opinion, 12/29/15, at 3-6.

The trial court addressed the lack of evidence to set forth a *prima facie* case that Appellee committed the crime of perjury as follows:

[Appellee] was held for court on a violation of 18 Pa.C.S.A. § 4902(a). This offense requires that defendant make a false statement under oath or affirm the truth of a statement previously made when the statement is material and he does not believe it to be true.

The record reveals that [Appellee] met with the AG on September 2, 2014 prior to his Grand Jury appearance and made statements. The record does not establish what those statements were, whether they were made under oath or equivalent affirmation, whether they were recorded, etc. See the Grand Jury Notes of Testimony, pg. 9, line 14 through pg. 11, line 5 for the exchange between the AG and [Appellee] as to what [Appellee] had or had not said during the meeting of September 2.

[Appellee] was under oath when he testified before the Grand Jury.

I had the luxury of being able to read and re-read the Grand Jury transcript. I did so as I was shocked by the manner in which [Appellee] was questioned. What was intended to be an inquiry into what [Appellee] did or did not know or did or did not do took

- 13 -

on the aspect of an inquisition. Present before the Grand Jury were three Deputy AGs. A fair read of the testimony reveals AGs who were alternately frustrated by or disbelieving of [Appellee's] responses. In fact, it is fair to conclude that they thought they were being "jerked around." The reaction to this perceived "jerking around" was unfortunate. Instead of stepping back, taking a deep breath and directing narrow questions to defendant, one of the AGs let his displeasure get the better of him. As a professional courtesy to the offending AG, not Mr. Augenbraun, I do not name him or set out in detail his comments. I do so as I realize his comments were out of character and motivated by his frustration. Instead, I note them in a footnote.[5] No witness should be subjected to such comments, comments that would not be uttered in a judge-supervised proceeding. Further, I note my disapproval of multiple attorneys questioning a witness whenever they feel the need to jump in and do so. This practice made an already confusing examination even more so and gave the appearance of a "tag team" wrestling match. The fact that many of the questions posed were compound questions did not help and made it difficult to determine exactly what the witness was responding to.

> [5] Examples of what I consider to be unprofessional questions or comments to [Appellee's] responses can be found at N.T., pg. 14, 11. 3-9; pg. 37, 11. 2-20; pg. 38, 1. 7; pg. 39, 1. 20 and pg. 58, 11. 1-3.

The AG failed to establish any variance between [Appellee's] comments on September 2 and his Grand Jury testimony as there was no evidence presented as to what he said on September 2. As such, this supposed variance cannot form the basis of the perjury charge.

The focus of the AG inquiry before the Grand Jury was [Appellee's] failure to properly and timely respond to its subpoena. See letter of August 15, 2014, attached hereto as Exhibit "A." This issue requires an analysis of what responsibility a successor owner has to retain and/or search through records of the prior owner. The AG implicitly asserts that a successor owner has a duty to maintain and produce records created at a time prior to his ownership. Alternatively, the AG suggests that if the records are on the premises and can be accessed, there is a duty to produce them. The AG cites no authority for this position, nor do I believe they can. The fact that the AG believes the failure of

computers on which records might exist is too convenient to be true or that [Appellee] cannot give a street address for his brother-in-law or computer consultant is not credible, is irrelevant to the duty to produce analysis. The issue is what was he in legal possession of and required to produce. To ask the question is to answer it. [Appellee] was not in legal possession of Summerdale's pre-2014 records and had no duty to produce them. A simple example will make my point. When I came on the bench, I left my old client files stored in the basement of a building I owned. I then rented the building to a third party who had access to my basement. I doubt the third party or anyone else for that matter believed he could exercise control over the files and certainly could not be compelled to produce them as they were not his. In fact, were he to take possession of them, he would arguably be committing a theft. [Appellee] was in this very position. However, before even needing to consider this scenario, his answers clearly reveal that he provided what he thought he was obligated to produce and/or that which he thought was in his control. When informed that his interpretation was erroneous, he indicated that he would comply to the extent possible. As such he made no false representations. In reaching my conclusion that [Appellee] had no ownership of or control over the Summerdale records pre-2014, I have considered the civil case law as to "successor liability" as it is somewhat analogous. "Successor liability" focuses on whether the transferee can be responsible for the debts or liabilities of the transferor (here, the records) SIMPLY BECAUSE IT ACQUIRED THE SELLER'S PROPERTY. See Johnson v. American Standard, 8 A.3d 318 (Pa. 2010). The general rule is non-liability unless credible evidence is produced to overcome it. If a transferee cannot be responsible for debt, etc., it most certainly can't be responsible to maintain or produce records of the transferor. The exceptions to the general rule can be found at Johnson, 8 A.3d at 322, fn 1. A closer analogy is the criminal law relating to possessory offenses. To be liable as a possessor, one must have actual or constructive possession of the item and the intent to control the item. The fact that the item is in an area that defendant has access to does not establish his control over it, let alone his intent to possess it. There was no evidence, direct or circumstantial, of [Appellee's] intent to possess or control the pre-2014 documents of Summerdale. As the pre-2014 Summerdale records were not [Appellee's], he had no duty to produce them and was improperly held on the perjury count.

Trial Court Opinion, 12/29/15, at 9-12.

After thorough review of the record, we conclude that the trial court correctly determined the Commonwealth failed to present a *prima facie* case that Appellee committed perjury while testifying before the grand jury. Thus, there is no support for the Commonwealth's assertion that "it is reasonable to infer that [Appellee] selected a small portion of documents to produce while holding the majority of them, notably the most relevant documents, back." Commonwealth's Brief at 21. The Commonwealth would have us conclude that, because documents that were not turned over by Appellee pursuant to the subpoena were discovered during the subsequent execution of a search warrant, Appellee knowingly lied about the existence of the documents. However, it is our determination that the Commonwealth failed to set forth sufficient evidence beyond mere suspicion that Appellee had any knowledge of the existence of the documents that were discovered during the execution of the search warrant.

Furthermore, there is no evidence beyond mere conjecture that Appellee made false statements regarding his inability to present the subpoenaed documentation to the grand jury or that he made purportedly false statements knowingly. Suspicion and conjecture are not evidence and are unacceptable as such. **Packard**, 767 A.2d at 1071. Indeed, review of the transcript of Appellee's testimony before the grand jury reflects that Appellee provided thorough explanations pertaining to the basic operation of the business he received from his brother-in-law approximately nine months earlier, his lack

of knowledge and access regarding the business's bank accounts prior to Appellee's ownership, his reasons for producing a limited number of documents, and the difficulty in locating additional documents. N.T., 9/16/14, at 3-82. There is no indication in the record that Appellee knew that his statements regarding his inability to present additional documentation pursuant to the subpoena were false. Consequently, the Commonwealth relies solely upon a tenuous inference to establish this element of perjury. Therefore, the Commonwealth has failed to meet its burden showing that a crime was committed. **Wodjak**, 466 A.2d at 997. Hence, we conclude the trial court properly determined that the Commonwealth failed to set forth a *prima facie* case with regard to the charge of perjury

## CRIMINAL CONSPIRACY

The Commonwealth next argues that the trial court erred in concluding that the Commonwealth failed to establish a *prima facie* case that Appellee committed the crime of criminal conspiracy to commit insurance fraud. Commonwealth's Brief at 33-40. The Commonwealth essentially asserts that, because Appellee's attorney received documents that had been delivered to AIG, Appellee was somehow involved in the alleged effort of the Risoldi family to defraud AIG. **Id**.

Before we may review the Commonwealth's claim, we observe that the fundamental tool for appellate review is the official record of the events that occurred in the trial court. **Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa.

Super. 2006) (citing **Commonwealth v. Williams**, 715 A.2d 1101, 1103 (Pa. 1998)). The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. **Id**. **Commonwealth v. Bracalielly**, 658 A.2d 755, 763 (Pa. 1995); **Commonwealth v. Baker**, 614 A.2d 663, 672 (Pa. 1992); **Commonwealth v. Quinlan**, 412 A.2d 494, 496 (Pa. 1980).

A certified record consists of the "original papers and exhibits filed in the lower court, paper copies of legal papers filed with the prothonotary by means of electronic filing, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court[.]" Pa.R.A.P. 1921 "We can only repeat the well established principle that 'our review is limited to those facts which are contained in the certified record' and what is not contained in the certified record 'does not exist for purposes of our review.'" **Commonwealth v. Brown**, 161 A.3d 960, 968 (Pa. Super. 2017) (quoting **Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008)).

> Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. **Commonwealth v. Kleinicke**, 2006 PA Super 48, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*). In [**Preston**], we explained that to facilitate an appellant's ability to comply with this requirement, our Supreme Court adopted the following procedural rule effective June 1, 2004:
>
> > The clerk of the lower court shall, at the time of the transmittal of the record to the appellate court, mail a copy of the list of record documents to all counsel of record, or if unrepresented by counsel, to the parties at the address they have provided to the clerk. The

- 18 -

> clerk shall note on the docket the giving of such notice.
>
> Pa.R.A.P. 1931(d). As the explanatory comment to Rule 1931 indicates, if counsel (or a party) discovers that anything material has been omitted from the certified record, the omission can be corrected pursuant to the provisions of Rule of Appellate Procedure 1926. Under Rule 1926, an appellate court may direct that an omission or misstatement shall be corrected through the filing of a supplemental certified record. However, this does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts. **Preston**, [904 A.2d] at 7.

**Commonwealth v. Bongiorno**, 905 A.2d 998, 1000-1001 (Pa. Super. 2006) (*en banc*).

In addition, in **Commonwealth v. Brown**, 52 A.3d 1139 (Pa. 2012), our Supreme Court indicated that, in certain circumstances, we may consider an item included in the reproduced record that has been omitted from the certified record. Specifically, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it. **Id**. at 1145 n.4. **See also** Pa.R.A.P. 1921 Note (stating "that where the accuracy of a pertinent document is undisputed, the Court could consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court" (citing **Brown**, 52 A.3d at 1145 n.4)).

Our review of the certified record reflects that neither the binder nor a copy of the purportedly fraudulent documents contained therein was included in the certified record for transmittal to this Court. Therefore, the Commonwealth, as the appellant, failed to ensure that a complete record is

J-E02006-18

before this Court for review.[6]  Moreover, the Commonwealth failed to include

a copy of the documents from the binder in the reproduced record presented

_____

[6]  We observe that the certified record was received in this Court on April 28, 2016.  Subsequently, on June 22, 2016, the Commonwealth filed with the trial court an "application to supplement the record pursuant to Pa.R.A.P. 1926," which bore captions for this case (Superior Court No. 223 EDA 2016) and for the case of Appellee's co-defendant, Mark Goldman (Superior Court No. 3822 EDA 2015).  In its application, the Commonwealth stated the following:

> 1. In order that the record may be complete in this matter, the Commonwealth requests that [the trial court] direct that the appellate record be supplemented with the following exhibits admitted during the preliminary hearing:
>
> > Exhibit 47:  Carl Risoldi EUO;
> >
> > Exhibit 48:  Carla Risoldi EUO;
> >
> > Exhibit 49:  Claire Risoldi EUO;
> >
> > Exhibit 50:  Mark Goldman EUO;
> >
> > Exhibit 72:  Sheila Risoldi EUO;
> >
> > Exhibit 93:  EUO excerpt; and
> >
> > Exhibit 94:  EUO excerpt.
>
> 2. The Commonwealth requests that the [trial c]ourt grant this application and direct that the supplemental record be certified and transmitted pursuant to Pa.R.A.P. 1926(b)(1), (c).

Application, 6/22/16, at 1-2.  On June 23, 2016, the trial court granted the Commonwealth's application to supplement the record and directed the clerk of courts to certify and transmit to this Court the requested exhibits.  Order, 6/23/16, at 1.

Likewise, on February 1, 2018, the Commonwealth filed with the trial court a second "application to supplement the record pursuant to Pa.R.A.P. 1926," which bore the caption for this case (Superior Court No. 223 EDA 2016).  In the application, the Commonwealth stated the following:

to this Court. Accordingly, because we cannot conduct a thorough review of the issue of whether the Commonwealth presented a *prima facie* case that Appellee committed the crime of criminal conspiracy without reference to the allegedly fraudulent documents delivered to his attorney by Mr. Goldman, our review is hampered, and we are constrained to deem this issue to be waived on appeal. However, even if we had not determined that the issue, we would conclude that the Commonwealth's claim fails under generally applicable legal principles.

The crime of criminal conspiracy is set forth in Section 903 of the Crimes Code which provides, in relevant part, as follows:

**§ 903. Criminal conspiracy.**

---

1. In order that the record may be complete in this matter, the Commonwealth requests that [the trial court] direct that the appellate record be supplemented with the following exhibits admitted during the preliminary hearing:

> Exhibit 147: Transcript of Richard Holston's September 16, 2014 grand jury testimony.

2. The Commonwealth requests that the [trial c]ourt grant this application and direct that the supplemental record be certified and transmitted pursuant to Pa.R.A.P. 1926(b)(1), (c).

Application, 2/1/18, at 1-2. On February 5, 2018, the trial court granted the Commonwealth's application and directed the clerk of courts to certify and transmit to this Court the requested transcript, which was admitted as Exhibit 147. Order, 2/5/18, at 1. Thus, when presented with the opportunity to correct deficiencies in the record, the Commonwealth did so. However, the Commonwealth failed to take the appropriate measures to ensure that the certified record was complete for our review of this issue.

**(a) Definition of conspiracy. —** A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

**(b) Scope of conspiratorial relationship. —** If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

**(c) Conspiracy with multiple criminal objectives. —** If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

* * *

**(e) Overt act. —** No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903.

Furthermore, we have explained the following:

> A conviction for criminal conspiracy, 18 Pa.C.S.A. § 903, is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy.

> The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be

accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, *i.e.,* that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.

A conspiracy is almost always proven through circumstantial evidence. "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." The evidence must, however, "rise above mere suspicion or possibility of guilty collusion."

Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002) (*en banc*) (citations omitted).

Our review of the record reflects the trial court observed that "there was no evidence that would support [Appellee's] involvement in a conspiracy to defraud." Trial Court Opinion, 4/22/16, at 3.[7] We are constrained to agree.

_____

[7] In doing so, the trial court corrected its initial determination in its opinion dated December 29, 2015, that the Commonwealth failed to prove a *prima facie* case of conspiracy to commit theft by deception. In recognizing its

First, we note that Appellee had an association with the Risoldi family because he was the current owner of Summerdale Mills. Summerdale Mills was the company that provided certain window treatments for the Risoldi residence, and the Risoldi family filed an insurance claim seeking proceeds to replace the window treatments.

Second, we observe that there is no evidence to establish that Appellee had knowledge of the commission of a crime. Specifically, with regard to the Commonwealth's claim that Appellee's "lies to the grand jury dovetail perfectly with Claire Risoldi's lies to AIG," and that "[t]he identical lies establish the agreement to defraud AIG," Commonwealth's Brief at 38, our review of the certified record reflects no evidence that Appellee was aware of any alleged lies made by Claire Risoldi to the insurance company.

Third, we consider Appellee's presence at the scene. Again, we note that Appellee, as the current owner of Summerdale Mills, was called to testify before a grand jury in that capacity. However, there was not a specific scene of the crime as contemplated in the factors set forth in **Lambert**. Accordingly, we conclude that this factor is not relevant to our inquiry.

_____

previous error, the trial court stated, "The AG asserts that I had the object of the conspiracy wrong in that I mentioned theft by deception when it was insurance fraud. I have no recall as to why I wrote that. However, I understood that the AG's theory was insurance fraud and that all Defendants were acting toward that end." Trial Court Opinion, 4/22/16, at 3 (footnote omitted).

Fourth, we review Appellee's participation in the object of the conspiracy. As mentioned above, Appellee is the owner of Summerdale Mills, which provided window treatments to the Risoldi family, and the family sought insurance proceeds to replace the window treatments. In addition, Appellee testified before the grand jury investigating the alleged insurance-fraud scheme perpetrated by the Risoldi family. As the Commonwealth observes, "[F]ollowing the execution of the search warrant at Summerdale Mills, co-defendant Mark Goldman delivered a binder of documents to AIG as well as to the [office of the Attorney General] purporting to contain records from Summerdale Mills which included records previously claimed by both the Risoldi's [sic] and [Appellee] to not exist." Commonwealth's Brief at 35-36. The Commonwealth further acknowledges that it "never alleged that [Appellee] fabricated the Summerdale Mills invoices presented to AIG." *Id*. at 37. Rather, the Commonwealth contends the fact that the same invoices that were delivered to AIG were also delivered to Appellee's attorney is indicative of a conspiracy between Appellee and the Risoldis. However, the mere receipt of the allegedly fraudulent documents by Appellee's attorney **after** Appellee testified before the grand jury and **after** the execution of the search warrant at his business, amounts to speculation and conjecture, which fails to establish that Appellee was an active participant in the criminal enterprise or that he had knowledge of a conspiratorial agreement. Accordingly, we are left to conclude that the Commonwealth failed to furnish

- 25 -

a web of evidence linking Appellee to an alleged conspiracy. Consequently, had we not determined that this issue is waived, within the confines of the record before us, we would conclude that the trial court properly determined that the Commonwealth failed to set forth a *prima facie* case with regard to the charge of criminal conspiracy.

<u>INSURANCE FRAUD</u>

The Commonwealth next argues that the trial court erred in concluding that the Commonwealth failed to establish a *prima facie* case that Appellee committed the crime of insurance fraud. Commonwealth's Brief at 40-45. The Commonwealth asserts that, by providing testimony and only certain documents to the grand jury and failing to provide other documents to the grand jury, Appellee essentially corroborated and furthered the efforts of the Risoldi family to defraud AIG in relation to the insurance claim for replacement of the window treatments. *Id*. at 43-44.

The Crimes Code defines insurance fraud, in relevant part, as follows:

**§ 4117. Insurance fraud.**

**(a) Offense defined. -** A person commits an offense if the person does any of the following:

* * *

(2) **Knowingly and with the intent to defraud** any insurer or self-insured, **presents or causes to be presented to any insurer** or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

- 26 -

18 Pa.C.S. § 4117(a)(2) (emphases added). In addition, the statute defines the term "statement," in part, as "[a]ny oral or written presentation or other evidence of loss, injury or expense, including, but not limited to, any notice, statement, proof of loss, bill of lading, receipt for payment, invoice, account, estimate of property damages, bill for services, . . . or computer-generated documents." 18 Pa.C.S. § 4117(l)

It is undisputed that, absent documentation that the window treatments had been replaced following the second fire at the Risoldi residence, AIG refused to pay the insurance claim related to the window treatments after the third fire. Moreover, it is undisputed that subsequent to Appellee testifying before the grand jury and a search warrant being executed at Summerdale Mills, Mark Goldman, a private investigator employed by the Risoldi family, delivered a binder to AIG that contained documents purportedly relating to the window treatments in question.

However, the Commonwealth presented no evidence that Appellee knew that the documents contained in the binder comprised any false, incomplete, or misleading information as required under the statute. Indeed, evidence of the requisite knowledge cannot be inferred from our thorough reading of the certified record. Rather, as the trial court stated, "The [Attorney General] did not present any evidence of a Summerdale quote that was provided to the insurer in the 2013 fire [claim]. Nor was any evidence presented that [Appellee] aided or abetted the submission of false information to the insurer

in the 2013 fire [claim]." Trial Court Opinion, 12/29/15, at 8. Thus, while Appellee may have given statements to the grand jury relevant to the existence of various documents and Appellee's ability to provide documents to the grand jury, there is no showing that these statements were made with any intent by Appellee to defraud the insurer. Therefore, even if the alleged misstatements contained in the binder were found to be material to the insurance claim, there is no evidence that Appellee had any knowledge of what was contained within the binder. Moreover, there is nothing in the record to indicate that Appellee was attempting to collect any money from the insurer. Hence, we are left to conclude, as did the trial court, that Appellee did not have the necessary *mens rea* to acquire anything from the insurer. Thus, the Commonwealth's claim fails.

<u>OBSTRUCTION OF JUSTICE</u>

The Commonwealth last argues that the trial court erred in concluding that the Commonwealth failed to establish a *prima facie* case that Appellee committed the crime of obstruction of justice. Commonwealth's Brief at 45-46. The Commonwealth states the following:

> It is the Commonwealth's position that under the same reasoning that a *prima facie* case was established for perjury, this count of obstruction of justice was supported by sufficient evidence to establish a *prima facie* case. [Appellee's] failure to produce the subpoenaed records and his lies under oath demonstrated a clear intent to obstruct the grand jury's investigation. As argued above, the lower court's conclusion that [Appellee] had no duty to produce the subpoenaed records was contrary to all standards relevant to determining whether or not a *prima facie* case had been met.

*Id*.

As set forth in our review of the charge of criminal conspiracy, the Commonwealth has failed to ensure that the certified record before this Court is complete in order that we may review the merits of this claim as well. With regard to the charge of obstruction of justice, our review of the record reflects that the documents Appellee actually produced pursuant to the grand jury's subpoena were presented in proceedings before the district magistrate as Commonwealth Exhibit 149. N.T., 8/19/15, at 61. In addition, the documents that were subsequently recovered during the execution of the search warrant at Summerdale Mills were presented in proceedings before the district magistrate as Commonwealth Exhibit 146. *Id*. at 12-13. However, the Commonwealth has failed to include, in either the certified record or the reproduced record, copies of the documents that comprised Exhibit 149, *i.e.*, the documents actually secured pursuant to the subpoena. Moreover, the Commonwealth did not seek to supplement the record to correct this specific deficiency pursuant to Pa.R.A.P. 1926. As such, we cannot compare those items that were voluntarily turned over pursuant to the subpoena to those items that were subsequently recovered during the search. Accordingly, our review of this claim is hampered, and we are constrained to conclude that this issue is waived. Again, even if not waived, we would conclude that the Commonwealth's claim lacks merit under generally applicable legal principles.

The Crimes Code defines the crime of obstruction of justice as follows:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S. § 5101. Our Supreme Court has explained:

In order to establish that [a defendant] obstructed the administration of law under section 5101, the Commonwealth must establish that: (1) the defendant had the intent to obstruct the administration of law; and (2) the defendant used force or violence, breached an official duty or committed an unlawful act.

*Commonwealth v. Goodman*, 676 A.2d 234, 235 (Pa. 1996). We observed

in *Commonwealth v. Snyder*, 60 A.3d 165 (Pa. Super. 2013):

In evaluating § 5101 convictions, our courts have explained that § 5101 is substantially based upon the Model Penal Code section 242.1. As stated in the comment to section 242.1 of the Model Penal Code "[t]his provision is designed to cover a broad range of behavior that impedes or defeats the operation of government."

*Id*. at 175 (case citations omitted).

Our review of the record reflects the Commonwealth has failed to establish that Appellee, who produced subpoenaed documents, had any knowledge of the existence of the additional documents that were subsequently seized pursuant to the search warrant. The Commonwealth's claim that Appellee must have known of the additional documents is mere suspicion and conjecture. Again, suspicion and conjecture are not evidence and are unacceptable as such. *Packard*, 767 A.2d at 1071. Consequently,

the Commonwealth relies solely upon a tenuous inference to establish this element of obstruction of justice. Without knowledge of the existence of the additional documents, we cannot conclude that Appellee intended to obstruct the administration of law by failing to surrender them pursuant to the subpoena. Therefore, the Commonwealth has failed to meet its burden showing that a crime was committed. **Wodjak**, 466 A.2d at 997.

Order affirmed.

Bender, P.J.E., Panella, J., Lazarus, J., and Dubow, J., join this Opinion.

Gantman, P.J., and Nichols, J., concur in the result.

McLaughlin, J., files a Concurring & Dissenting Opinion.

Stabile, J., files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/31/19