J-A01030-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LYNN KLESO | : | No. 1315 EDA 2019 |

Appeal from the Order Entered April 18, 2019
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002202-2018

BEFORE: NICHOLS, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY MURRAY, J.:             **FILED FEBRUARY 04, 2020**

The Commonwealth appeals from the trial court's order dismissing with prejudice all charges filed against Appellee, Lynn Kleso (Kleso). Upon review, we affirm.

Kleso[1] was the manager of Better Homes & Gardens Real Estate (BHG) from March 2015 to August 2015.[2] In her role as manager, Kleso received rent payments from tenants at the Bushkill office and transported the payments to the Stroudsburg office. In May 2016, the Pennsylvania State Police began investigating Kleso after receiving a report that she had stolen

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court notes that Kleso was formerly known as Lynn "Wilklow." Trial Court Opinion 4/18/19, at 1 n.1.

[2] BHG is a real estate office affiliated with NEPA Management (NEPA), based in Monroe County, Pennsylvania.

$2,900 from BHG during the course of her employment. In 2017, the Commonwealth charged Kleso with five counts of theft by unlawful taking at docket number 1922 CR 2017. *See* Trial Court Opinion, 4/18/19, at 1 n.1. After the trial court conducted a hearing, it dismissed the charges because "there was an absence of evidence to indicate that the rent payments in question were ever deposited[,]" and the Commonwealth failed to prove "a *prima facie* case that [Kleso] took or exercised unlawful control over the cash rent payments." *Id.*

On November 20, 2018, the Commonwealth again filed charges, this time alleging that Kleso had received stolen property, committed theft by failing to make required disposition of funds, and committed five counts of theft by unlawful taking of movable property.[3] The affidavit of probable cause states:

> On Monday, May 2, 2016[, Trooper John Lutchko] began a theft investigation which occurred at the Better Homes and Garden Bushkill Branch, located at 5226 Milford Road, Middle Smithfield Township, Monroe County. The victims report that between the months of March and August of 2015, it was reported that five (5) cash deposits in the amount of $580.00 had been received by the victim, NEPA Management. These deposits were received and receipts given to the depositor. Reconciliation sheets were completed with daily deposits; however, the $580.00 cash deposit was missing from each of the five (5) interoffice cash receipts log.
>
> On each interoffice cash receipt log, the manager who is identified as [Kleso] signed the interoffice cash receipts log and delivered the deposits to the main accounting department in

---

[3] 18 Pa.C.S.A. §§ 3925, 3927, and 3921(a).

- 2 -

Stroudsburg, PA, which is part of her duties as a manager. Also, as a manager, [Kleso] had direct access to the safe via key. These deposits were received and entered into an automated cash flow system. It was discovered that multiple people who were assigned to sit at the front desk of NEPA Management would receive these cash deposits and place them into the safe. It is customary for two (2) agents to sign the deposit and receipt, verifying the cash.

[Kleso] would then open the safe with her management key she was issued, and remove all the deposits. She would then list all of the deposits on the interoffice cash receipts log. Each time the $580.00 deposit was not listed on the reconciliation sheet; however, [it] had [Kleso's] signature on it. During the investigation, interviews were conducted with the victims and the office chief financial officer. [Trooper Lutchko] examined copies of the interoffice cash receipts and reconciliation sheets.

A total of five (5) deposits were made, and receipts issued. Each of these five (5) deposits were dropped into the safe and [Kleso] gathered the deposits and listed each deposit except for the $580.00 cash deposit. The total amount of money in which was stolen by [Kleso] was $2,900. . . .

Affidavit of Probable Cause, 4/20/16, at 1.

At the conclusion of the preliminary hearing on October 3, 2018, the magisterial district judge bound the charges for trial. On December 21, 2018, Kleso filed an omnibus pretrial motion, which included a motion for writ of *habeas corpus*, requesting that the court conduct a hearing for the Commonwealth "to carry its burden of proving a *prima facie* case with regard to all charges placed within the [c]riminal [i]nformation." Omnibus Pretrial Motion, 12/21/18, at 2. A hearing on the motion was held on February 4, 2019.

On April 18, 2019, the trial court issued an opinion and order granting Kleso's motion and dismissing the November 20, 2018 criminal information

with prejudice. The Commonwealth filed a timely notice of appeal[4] and a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925. The trial court filed a Rule 1925(a) opinion relying on its April 18, 2019 order and opinion.

The Commonwealth presents the following issue for review:

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO REVIEW THE EVIDENCE IN A LIGHT MOST FAVORABLE TO THE COMMONWEALTH WHEN IT REVIEWED THE EVIDENCE PRESENTED FOR THE *PRIMA FACIE* CASE ON ALL CHARGES?

Commonwealth Brief at 6.

The Commonwealth argues that the trial court viewed the evidence incorrectly, averring that the court "erred as a matter of law in dismissing the charges against [Kleso] when it found the evidence presented at the omnibus hearing on [Kleso]'s motion for *habeas* relief failed to establish a *prima facie* case for all charges." *Id.* at 7.

At the outset, we recognize:

In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error. A trial court may grant a defendant's petition for writ [of] *habeas corpus* after a preliminary hearing where the Commonwealth has failed to present a *prima facie* case against the defendant.

---

[4] In compliance with Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth certified "that the preclusion of charges ordered by the [c]ourt in its Opinion dated April 18, 2019, will terminate or substantially handicap the prosecution." Notice of Appeal, 5/2/19, at *3.

*Commonwealth v. Hilliard*, 172 A.3d 5, 10 (Pa. Super. 2017) (citations omitted).

Further:

> The evidentiary sufficiency of the Commonwealth's case, or lack thereof, is a question of law; as such, our scope of review is plenary. *Commonwealth v. Karetny*, [] 880 A.2d 505, 528 ([Pa.] 2005). We have previously described the well-settled principles governing preliminary hearings, as well as the Commonwealth's concomitant burden, as follows:
>
> > The purpose of a preliminary hearing is to determine whether the Commonwealth has made out a *prima facie* case for the offenses charged. A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime.
> >
> > The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe that the person charged has committed the offense.
> >
> > *Commonwealth v. Ouch*, 199 A.3d 918, 923 (Pa. Super. 2018) [].

*Commonwealth v. Perez*, --- A.3d ----, 2019 WL 4926192, *5 (Pa. Super. 2019) (*en banc*) (emphasis and footnote omitted).

- 5 -

The Commonwealth claims the trial court incorrectly determined that it failed to prove a *prima facie* case of receiving stolen property for Kleso's alleged actions during her employment at BHG. Commonwealth Brief at 12. "A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925. In Section 3925, "the word 'receiving' means acquiring possession, control or title, or lending on the security of the property." *Id.* Therefore, three elements need to be proven to establish the crime of receiving stolen property: "(1) intentionally acquiring possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Robinson*, 128 A.3d 261, 265 (Pa. Super. 2015) (citations omitted).

The Commonwealth also contends that the trial court incorrectly determined that it failed to establish a *prima facie* case of theft by failure to make required disposition of funds received. Commonwealth Brief at 9-11. The Crimes Code provides:

> **(a) Offense defined.--**A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as

belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

**(b) Presumptions.--**An officer or employee of the government or of a financial institution is presumed:

> (1) to know any legal obligation relevant to his criminal liability under this section; and

> (2) to have dealt with the property as his own if he fails to pay or account upon lawful demand, or if an audit reveals a shortage or falsification of accounts.

18 Pa.C.S.A. § 3927.

To secure a conviction under Section 3927, the Commonwealth must prove that the defendant: (1) obtained the property of another; (2) subject to an agreement or known legal obligation upon the receipt to make specific payments or other disposition thereof; (3) intentionally dealt with the property obtained as if it were the defendant's own; and (4) failed to make the required disposition of property. ***Commonwealth v. Wood***, 637 A.2d 1335, 1343 (Pa. Super. 1994) (citations omitted).

Finally, the Commonwealth claims the trial court incorrectly determined that it failed to establish *prima facie* cases of theft by unlawful taking. Commonwealth Brief at 12-13. "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921. "Proof of theft by unlawful taking requires three elements: (1) unlawful taking or unlawful control over movable property; (2) movable property belongs to another; and

(3) intent to deprive (permanently)." ***Commonwealth v. Young***, 35 A.3d 54, 62 (Pa. Super. 2011) (citations and unnecessary capitalization omitted).

In response, Kleso submits that the trial court correctly dismissed the charges because the Commonwealth failed to establish a *prima facie* case for the three theft crimes. Kleso asserts that the Commonwealth did not provide any evidence that she ever took possession of the cash payments, and "the evidence shows someone other than Ms. Kleso accepted and handled the cash payments." ***See*** Kleso's Brief at 7-9. She argues that the "record is devoid of any evidence that the payments were deposited in the safe and by whom," and the "Commonwealth presented no evidence that she ever handled or transported the funds," or that she "exercised control over the alleged cash payments in question." ***Id.*** Upon review, we agree.

We reiterate, "[t]o demonstrate that a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as well as the defendant's complicity therein." ***Commonwealth v. Dantzler***, 135 A.3d 1109, 1112 (Pa. Super. 2016) (citation omitted). The Commonwealth may sustain its burden of proving every element of the crime(s) by means of wholly circumstantial evidence. ***Commonwealth v. Hansley***, 24 A.3d 410, 416 (Pa. Super. 2011). However, "we have also noted that suspicion and conjecture are not evidence and are unacceptable as such." ***Commonwealth v. Holston***, 211 A.3d 1264, 1269 (Pa. Super. 2019) (*en banc*) (citation omitted). "Where the Commonwealth's case relies solely upon a **tenuous inference** to establish a material element

of the charge, it has failed to meet its burden of showing that the crime charged was committed." ***Id.*** (citation omitted, emphasis in original). "To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof." ***Dantzler***, 135 A.3d at 1112 (citation omitted).

The trial court accurately summarized the evidence presented by the Commonwealth as follows:

\*       \*       \*

At the [p]reliminary [h]earing, Rosemarie Lobe Waller testified. Ms. Waller is the [chief financial officer] of NEPA, and in 2016, she conducted an audit of BH&G after being contacted by an owner. That owner claimed that he was owed money. Through an audit of the records, she discovered discrepancies in the cash envelopes received at BH&G and those transmitted to NEPA. Ms. Waller explained that when a tenant pays in cash, the employee of BH&G places the money into an envelope and prepares a receipt for the payment on a receipt log. The receipt is carbonized, one copy is given to the tenant and another transmitted to NEPA for payment to the owner. The cash envelope is then placed into a safe which is under the front desk and bolted to the floor. The manager retrieves the money from the safe and prepares a transmittal sheet of each envelope (Interoffice Cash Receipt Log). The procedure is completed by the manager who writes down everything taken out of the safe. The envelopes and transmittal sheet are then delivered to Ms. Waller in the Stroudsburg office.

Mr. Shah is an owner who was contracted with NEPA. Mr. Shah or his son contacted NEPA about money missing from their tenant, Mr. Tobias Diaz. The dates of the missing money were 3/2, 4/2, 6/1, 7/1, and 8/3 of 2015. After being advised of the discrepancy, Ms. Waller then conducted an audit of the Bushkill office specific to this owner and tenant. The payments were allegedly made in cash generating a cash receipt. Ms. Waller noted a discrepancy between the receipt log and transmittal sheet. The dates of 3/2, 4/2, 6/1, 7/1, and 8/3 of 2015 were the

- 9 -

dates of the missing cash payments. Each of the missing payments was in the amount of $580 for a total of $2,900.

\*　　\*　　\*

The evidence presented by the Commonwealth include the cash receipt journals, interoffice cash receipts logs, and a summary of the rent analysis of 5245 Milford Road, LLC, owned by the Shahs. The deposit envelope for March 2, 2015, was written by Matt Jacobson containing the buyer/lessee as Tobias Diaz but containing an incorrect address and payment amount. The amount was listed as $175 for the address Tour Maple Lane, Unit 4, Bldg. 1. The receipt number on the envelope was listed as receipt #35924; however, the cash receipt was listed as receipt number #35928. That receipt (#35928) also contained the additional signature of Donna DiBernard. . . .

At [the] hearing held on February 4, 2019, Trooper Lutchko testified that he never interviewed Matt Jacobson about the theft and his handling of the money. He also stated that he was unable to speak to [Kleso] about the thefts.

Ms. Waller testified that whoever was at the front desk would accept the cash payment brought in by tenants. Therefore, multiple employees may receive payments, place it in an envelope and secure it in the safe. After secured in the safe, it was the responsibility of the manager to transport the cash envelopes to NEPA in Stroudsburg. The cash receipts contain signatures of the employee accepting the payment; however, the specific payments missing in this case are not listed on the Interoffice Cash Receipts Log. [Kleso] signed the Interoffice Cash Receipts Log for transport of the envelopes to the Stroudsburg office.

Trial Court Opinion, 4/18/19, at 1-5 (citations to notes of testimony omitted).

The trial court addressed the dearth of evidence in attempting to establish a *prima facie* case for the three theft crimes:

Although criminal intent may be inferred from circumstantial evidence, the circumstantial evidence in this case is not strong. The specific payments were received by employees at the front desk who generated the receipts. These payments were placed in envelopes and deposited into the safe. [Kleso], as the manager

in the Bushkill office, was responsible for transporting the envelopes deposited in the safe to the Stroudsburg office. She did not receive these payments nor did she sign the Interoffice Cash Receipts Log reflecting that these envelopes were being transported. The record is devoid of any evidence that these payments were ever deposited into the safe and by whom. The Commonwealth introduced cash receipts into evidence; however, there was no evidence that these payments were actually deposited into the safe. Although Ms. Waller testified that this was the office procedure, there was no evidence that the envelopes were actually placed in the safe.

The receipts entered into evidence demonstrate that individuals other than [Kleso] handled the cash payments. **There is a dearth of evidence to demonstrate that [Kleso] ever handled the cash or envelopes**. The cash receipts indicate that several other employees actually received the cash payments in question. The exhibits do not reflect the payments for transport in the Interoffice Cash Receipts Log.

In regard to access to the safe, Ms. Waller testified that [Kleso] had a key to the safe but she was unaware if Christine Wilkins and Tom Wilkins had keys. In addition, Ms. Waller stated that Denis Mooney, vice president, functioned as manager on occasion at the Bushkill branch, consequently, he would also have a key to the safe. On cross-examination at the preliminary hearing on October 3, 2018, Ms. Waller stated that she may have stated that Christine Wilkins and Tom Wilkins, owners of the company (NEPA) had keys to the safe. It is possible that more than one person had keys to the safe at BH&G.

*       *       *

As we have stated above, there is an absence of evidence demonstrating that [Kleso] obtained the property. There was no evidence that [she] ever handled or transported the funds in question from BH&G. The Interoffice Cash Receipts Log, which contained the dates of the cash receipts, does not indicate that those envelopes, with the correct amount, were ever handled by [Kleso].

*       *       *

As set forth above and viewing all the evidence in a light most favorable to the Commonwealth, we have determined that the

- 11 -

> Commonwealth has failed to establish [Kleso's] exercise or control over the property.

Trial Court Opinion, 4/18/19, at 5-8 (emphasis added) (footnotes and citations to notes of testimony omitted).

Our review of the record reflects comports with the trial court's conclusion that the Commonwealth failed to establish Kleso took possession of the cash payments received from Mr. Diaz at the front desk of BHG, an element of all three crimes charged.  *See* 18 Pa.C.S.A. § 3925; 18 Pa.C.S.A. § 3927; 18 Pa.C.S.A. § 3921(a).   The Commonwealth's claim that Kleso withdrew the payments from the safe and kept them, instead of delivering the money to Ms. Waller, is "suspicion and conjecture" because there is no evidence Kleso ever possessed or controlled the cash payments.  *Id.*; *see also Holston*, 211 A.3d at 1269.  The Commonwealth thus relies on "tenuous inference" to establish the possession element of all three crimes, and as such, fails to make a *prima facie* case for receiving stolen property, theft by unlawful taking, or theft by failure to make required disposition of funds.  Accordingly, we affirm the trial court's order dismissing with prejudice the charges filed against Kleso.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/20

- 12 -