J-S22044-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PHILLIP MALDONADO | : | |
| | : | |
| Appellant | : | No. 83 MDA 2020 |

Appeal from the PCRA Order Entered December 13, 2019
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000656-2015

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                          **FILED JUNE 23, 2020**

Appellant, Phillip Maldonado, appeals from the order entered December 13, 2019, that denied his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The facts underlying this appeal are as follows.  On May 16, 2014, Tiffany Hoover purchased drugs from Appellant at his home.  ***Commonwealth v. Maldonado***, No. 1504 MDA 2016, unpublished memorandum at 2 (Pa. Super. filed June 13, 2017) (citing N.T., 8/3/2016, at 18-20); PCRA Court Opinion, dated December 13, 2019, at 2.  While she was at Appellant's house,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541–9546.

Appellant introduced her to the victim[, Julio Rivera,] and asked her if she wanted to make some money, which Ms. Hoover understood as having sex or "doing other things" with the victim. [N.T., 8/3/2016,] at 20. Ms. Hoover observed that the victim had bags of heroin that he purchased from Appellant; bags identical in appearance to bags she purchased from Appellant. *See id.* at 20-21. The victim and Ms. Hoover then drove to a motel [in Lebanon], smoking crack cocaine, purchased from Appellant, together. *See id.* When they got into the motel room, Ms. Hoover stated that she injected heroin that she had purchased from Appellant, while the victim sniffed his heroin. *See id.* at 21-23. Then, [when they ran out of heroin,] at the victim's request, Ms. Hoover contacted Appellant to purchase more heroin. *See id.* at 22. Appellant came to the motel [in a taxi cab] and delivered an additional four bags of heroin. *See id.* Ms. Hoover helped the victim inject one bag of heroin; shortly thereafter, she observed the victim get sick and then go into a sleepy state. *See id.* at 24-25. At that point, Ms. Hoover stole some of the victim's property and left. *See id.* at 25. The next morning, the motel's assistant manager found the victim dead in the room and contacted the police. *See id.* at 11-12.

Lebanon City Police Detective William Walton . . . spoke with Appellant on three separate occasions. *See id.* at 46-50. In his first statement, Appellant admitted that he purchased a specific brand of heroin called Sale on Ms. Hoover's behalf, then sold it to her on May 16, 2014. *See id.* at 46. He also admitted going to the motel to sell additional drugs to her, but claimed it was crack cocaine not heroin. *See id.* at 47. During the second conversation, Appellant claimed that when Ms. Hoover contacted him for additional heroin, it was too late in the evening to contact the dealer he purchased it from and that this was why he delivered crack cocaine. *See id.* at 48. During the third conversation, Appellant admitted delivering the second batch of heroin to Ms. Hoover but claimed that she must have tampered with it before giving it to the victim. *See id.* at 50.

*Maldonado*, No. 1504 MDA 2016, at 2-3 (some formatting); *see also* PCRA

Court Opinion, dated December 13, 2019, at 2.

"On April 27, 2015, the Commonwealth filed a criminal information

charging Appellant with one count each of[:] drug delivery resulting in death[

- 2 -

("DDRD"), a felony of the first degree;] criminal conspiracy[;] possession with intent to deliver a controlled substance[;] and receiving stolen property.[2]" *Id.* at 2. When Sergeant Jonathan Hess of the Lebanon City Police "gave Appellant a copy of the charges . . ., Appellant stated that he gave the heroin to Ms. Hoover and she 'shot [the victim] up.'" *Id.* at 3-4 (quoting N.T., 8/3/2016, at 65).

On March 26, 2015, Appellant waived his preliminary hearing; at this time, he was represented by the Lebanon County Public Defender. On May 5, 2015, after finding "its appearing to the [trial c]ourt that there is a conflict of interest by the Public Defender's Office," the court appointed new trial counsel to represent Appellant. Order of Court, 5/3/2015.

> On June 26, 2015, [t]rial [c]ounsel filed a Pretrial Motion seeking to have the [DDRD] and Conspiracy charges dismissed and seeking a jury instruction on Involuntary Manslaughter. [The trial court] conducted a hearing on the Pretrial Motion on August 12, 2015. On September 15, 2015, [the trial court] issued an Order refusing to dismiss the [DDRD] and Conspiracy charges and deferring the decision regarding the Involuntary Manslaughter instruction until trial. . . .
>
> On August 3, 2016, immediately before trial was to begin, [Appellant] submitted a letter to the [trial court] complaining about [t]rial [c]ounsel's representation and an alleged conflict of interest. The [trial court] met with counsel in chambers and read the letter on the record. Trial [c]ounsel acknowledged that [Appellant] had complained about his representation on an almost weekly basis. [Trial counsel] advised [Appellant] that he could conduct his defense *pro se* if he was unhappy, but [Appellant] had declined that suggestion. [The trial court] denied [Appellant]'s

---

[2] 18 Pa.C.S. §§ 2506(a), 903(a)(1), 35 P.S. § 780-113(a)(30), and 18 Pa.C.S. § 3925(a), respectively.

request for the appointment of new counsel and [Appellant] proceeded to trial with [t]rial [c]ounsel conducting his defense.

PCRA Court Opinion, dated December 13, 2019, at 5, 8-9 (citing N.T., 8/3/2016, at 3-6).

At trial, "[c]ounsel conducted a lengthy cross-examination of Hoover[,]" *id.* at 21, which included the following:

Q. And you know that when all is said and done you're going to be standing in front of a judge and you're going to be sentenced for your role in [DDRD], do you not?

A. Yes.

Q. Okay. When you stand[] in front of that judge, you are going to tell that judge that you were sitting here and testifying today, aren't you?

A. Yes.

Q. You want that judge to know that you were sitting here and being cooperative and talking to us, right?

A. Yes.

Q. And you want that judge to know that you helped the prosecutor as much as you could, don't you? Isn't that what you want the judge to know?

A. Uh-huh, yes. . . .

Q. Now, you have three cases right now that are pending –

A. Yes. . . .

Q. And they have been delayed in order for you to come in here and testify, isn't that correct?

A. I'm really not sure. I haven't spoken to my lawyer in a while. . . .

[Q.] You're in a green uniform right now, but isn't true that recently you have been in a red uniform in the prison?

A. Yes.

Q.    And you were in a red uniform, meaning that you were in a disciplinary uniform, correct?

A.    Yes, I was.

Q.    And that was for using drugs in the prison; isn't that right?

A.    Yes.

Q.    Okay. So while you were in prison this time you have been using drugs?

A.    Yes. . . .

Q.    Now, you said that [Appellant] was your connection to obtaining drugs when you were out on the street?

A.    Yes.

Q.    You had more than one connection though, right?

A.    Yes. . . .

Q.    So we talked about your story that you're giving today, but you also acknowledge that you have given stories in the past to the police, correct?

A.    Yes.

Q.    By my count you met with the police three separate times and [have] given three separate stories; isn't that right?

A.    Not three separate stories. . . .

Q.    So when you talked to the police just six days after this happened, more than two years ago, you didn't tell them anything about [Appellant] selling you an additional four bags of heroin, did you?

A.    I – I told them that he came down in a taxi, yes. . . .

Q.    Okay. And the reason that you went with [the victim] was because your intention was to have sex with him for money; isn't that right?

A.    Yes.

N.T., 8/3/2016, at 29-33, 36, 38-39.

Trial counsel "questioned Detective Walton about the existence of any videos and Detective Walton . . . testified that he did not believe the [m]otel had any cameras." PCRA Court Opinion, dated December 13, 2019, at 23.

> The parties stipulated that the victim died because of mixed substance toxicity. *See* [N.T., 8/3/2016,] at 68. Namely, he had ethanol (alcohol), morphine, cocaine, cocaethylene, benzoylecgonine, and 6-monoacetylmorphine in his blood at the time of death. *See id.*
>
> Joann Sell, the retired manager of the toxicology department for Health Network Laboratories, also testified as an expert at trial. *See id.* at 69, 79. Ms. Sell stated that neither the amounts of alcohol nor the amounts of cocaine in the victim's blood were sufficient to cause death. *See id.* at 90, 92-94. She testified that, to a reasonable degree of scientific certainty, the victim would not have died but for the use of heroin. *See id.* at 94-95, 105, 108.[3]
>
> At the close of the Commonwealth's evidence, Appellant moved for a judgment of acquittal with respect to the count of receiving stolen property. *See id.* at 112. The trial court granted the motion. *See id.*
>
> Appellant took the stand on his own behalf. *See id.* at 113. Appellant testified that he both used and sold drugs, sometimes acting as an intermediary, purchasing drugs from another dealer and selling them to a user. *See id.* at 113-15. He admitted that he purchased the Sale brand of heroin from another dealer and sold it to Ms. Hoover on May 16, 2014. *See id.* at 115. He also admitted that, later that day, after receiving a phone call from Ms. Hoover, he took a cab to the motel and sold her crack cocaine; he believed it was too late at night to get more of the Sale brand of heroin. *See id.* at 116-18. Appellant claimed that Ms. Hoover

---

[3] 6-monoacetylmorphine is a marker for heroin use, and, based on the level of 6-monoacetylmorphine in the victim's system, Sell concluded that he died a short time after ingesting the heroin, as heroin dissipates within two hours of consumption. N.T., 8/3/2016, at 108-09; PCRA Court Opinion, dated December 13, 2019, at 4.

was alone at the motel room and averred that he had never sold drugs to the victim and did not ever see him. *See id.* at 118-19.

The jury convicted Appellant of all remaining charges, including involuntary manslaughter,[4 a felony of the second degree,] which Appellant requested. *See id.* at 133, 139-40. On August 31, 2016, the trial court sentenced Appellant to an aggregate term of incarceration of not less than nine nor more than nineteen years to be served consecutively to [Appellant's five to ten year sentence in an unrelated action at Docket Number CP-38-CR-0001143-2014.] *See* Sentencing Order, 8/31/16, at i-iii.[5 Appellant received no penalty for involuntary manslaughter, as it merged with DDRD. *Id.* at ii.] On September 8, 2016, Appellant filed both a timely notice of appeal and a concise statement of errors complained of on appeal.

*Maldonado*, No. 1504 MDA 2016, at 4-5 (some formatting).

Thereafter, [Appellant] sent correspondence to the [trial c]ourt which [the court] treated as a Motion to Appoint Substitute Counsel. In this correspondence, [Appellant] requested that another attorney be appointed to handle his appeal based on allegations of a conflict of interest between himself and [t]rial [c]ounsel and various shortcomings in [t]rial [c]ounsel's handling of his defense.

[The trial court] conducted a hearing on that Motion on September 28, 2016. At that hearing, [Appellant] complained that there was a conflict of interest because [t]rial [c]ounsel had questioned his credibility during cross-examination in another criminal action, *Commonwealth v. William Culbreath*,[2] in which [t]rial [c]ounsel had represented William Culbreath and Appellant had testified as a witness for the Commonwealth. He also raised various complaints regarding [t]rial [c]ounsel's handling of his defense and the fact that [t]rial [c]ounsel had advised him that his appeal had no merit.

---

[4] 18 Pa.C.S. § 2504(a).

[5] On September 8, 2016, the trial court entered an amended written sentencing order, so as to correct a clerical error from the written sentencing order dated August 31, 2016. Appellant's judgment of sentence, however, did not change.

[2] ***Commonwealth v. William Davaughn Culbreath***, Court of Common Pleas of Lebanon County, No. CP-38-CR-763-2014. Both the [trial c]ourt and [Appellant] requested a transcript of [Appellant]'s testimony from the jury trial which was conducted in that case on January 5, 2015. The notes of testimony of that jury trial were never transcribed and the court stenographer who recorded the proceeding has left County employment. Unfortunately, the stenographer's notes could not be located for a transcript to be prepared[.]

PCRA Court Opinion, dated December 13, 2019, at 5-6. The trial court continued the hearing until October 5, 2016. At that time, Appellant agreed to allow trial counsel to continue representing him on appeal, with the understanding that he could raise ineffective assistance of counsel claims against trial counsel on collateral review. ***See*** N.T., 10/5/2016, at 31-33; ***see also*** Letter from trial court to trial counsel (October 19, 2016).

"On December 9, 2016, counsel filed a motion to withdraw and ***Anders***[6] brief in this Court[,]" asserting that "the evidence was insufficient to sustain Appellant's conviction[.]" ***Maldonado***, No. 1504 MDA 2016, at 5. On June 13, 2017, this Court affirmed Appellant's judgment of sentence and granted trial counsel's request to withdraw. ***Id.*** at 1.

On December 20, 2017, Appellant filed his first, *pro se*, timely PCRA petition. The next day, the PCRA court appointed counsel to represent Appellant. On January 30, 2018, the PCRA court ordered PCRA counsel to file

---

[6] ***Anders v. California***, 386 U.S. 738 (1967).

an amended petition within 30 days of the date of the order. On February 20, 2018, PCRA counsel filed a supplemental PCRA petition.[7]

On May 16, 2019, the PCRA court held an evidentiary hearing, during which --

> [Appellant] again raised his claim of a conflict of interest between himself and [t]rial [c]ounsel due to their interaction during the **William Culbreath** jury trial. [Appellant] claim[ed] that during his cross-examination [at the **Culbreath** trial], [t]rial [c]ounsel attacked [Appellant]'s credibility and called him a liar. As a result, [Appellant] claim[ed] that [t]rial [c]ounsel was "prejudiced against me from the beginning." [Appellant] claim[ed] that he was deprived of his right to effective representation when [t]rial [c]ounsel told him that "he couldn't file a conflict of interest or ineffective counsel against himself" and failed to request that new counsel be appointed to handle this matter. . . . Trial [c]ounsel [testified] that he did personally meet with [Appellant] prior to the jury trial although he was unable to recall the exact number of times or the locations of their meetings due to the passage of time: "there was no way to go to trial without having a face-to-face meeting." He explained that these meetings would have occurred at the Lebanon County Correctional Facility and/or at the Courthouse. He explained that he was fully prepared for the jury trial and knew that [Appellant] wanted to testify; he also knew the substance of the testimony of both [Appellant] and Hoover. He also noted that [Appellant] had written him numerous letters expressing his wishes and beliefs about the case. Trial [c]ounsel always answered these letters.

PCRA Court Opinion, dated December 13, 2019, at 9, 20 (quoting N.T., 5/16/2019, at 10, 76). PCRA counsel asked trial counsel, "Would you think it

---

[7] In the certified record, the supplemental PCRA petition has two date-stamps: February 20, 2018, and April 10, 2018. Both state "Entered & Filed, Clerk of Courts, Lebanon, PA." There is no indication in the record why there are two filing dates. Nonetheless, as the certified docket lists February 20, 2018, as the date that the supplemental PCRA petition was filed, we will accept that date and thus consider the supplemental PCRA petition to have been timely filed.

would have been helpful or beneficial to go through each different variation of the stories that [Hoover] gave?" N.T., 5/16/2019, at 91. Trial counsel answered, "If the stories were different. In a substantive way, I think that may have been useful, yes." *Id.* Also, trial counsel believed that the motel did not have any surveillance cameras. PCRA Court Opinion, dated December 13, 2019, at 23.

On December 13, 2019, the PCRA court denied Appellant's petition *via* a written order and opinion. The lower court's docket reveals that Appellant, who was still represented by counsel, filed a *pro se* notice of appeal on January 9, 2020, but the notice was never forwarded to this Court. On January 10, 2020, PCRA counsel filed a notice of appeal, which was docketed in this Court as the instant appeal at No. 83 MDA 2020. As the counseled notice of appeal was timely filed, there was no need for this Court to order that the trial court forward the *pro se* notice of appeal to this Court to be docketed, in order for Appellant to obtain the benefit of an earlier filing date.[8]

Appellant now presents the following issues for our review:

[1.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to interview and call Eric Michael Livering as a witness as he would have testified that Tiffany Hoover informed him that she cut the drugs that she used to inject into the victim that ultimately killed him?

---

[8] On January 17, 2020, PCRA counsel filed Appellant's statement of errors complained of on appeal. On January 21, 2020, the PCRA court entered a statement that its opinion dated December 13, 2020, would serve as its opinion pursuant to Pa.R.A.P. 1925(a).

[2.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to interview or call the following witnesses to rebut Tiffany Hoover's testimony that she provided at trial regarding what happened on the day in question: Racheal Pilkington; Christine Shaw; and Samantha Santiago?

[3.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to file a motion to allow Appellant to have a new preliminary hearing when Appellant was not granted his promise to be returned to the Lancaster County Prison in return for Appellant waiving his preliminary hearing?

[4.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to file a Petition for Writ of Habeas Corpus to attack the Commonwealth's establishment of a prima facie case?

[5.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] asked the [trial c]ourt to include the offense of Involuntary Manslaughter?

[6.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to have confidential face-to-face communication with him while preparing for trial?

[7.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to properly cross-examine Tiffany Hoover regarding the numerous variations of her story?

[8.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to provide a proper defense for Appellant's trial by failing to obtain the [m]otel surveillance video and taxi records to prove that Appellant was not present at the [m]otel when the drugs were given to the victim that resulted in his death?

[9.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] failed to obtain the victim's phone records to

prove that he was contacting other drug dealers on the night in question?

[10.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [t]rial [c]ounsel should have filed a Suppression Motion regarding the fact that the Commonwealth reviewed the phone records prior to the search warrant being filed?

[11.] Whether the Appellant was denied his constitutionally guaranteed right to effective representation when Appellant avers that [trial counsel] was a conflict of interest to the case as he cross-examined Appellant in a previous case where Appellant was a Commonwealth witness?

Appellant's Brief at 4-8 (issues re-ordered to facilitate disposition) (suggested answers omitted).

"We review the denial of PCRA relief to decide whether the PCRA court's factual determinations are supported by the record and are free of legal error." *Commonwealth v. Medina*, 209 A.3d 992, 996 (Pa. Super. 2019) (quoting *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018)), *reargument denied* (July 17, 2019).

All of Appellant's appellate challenges allege ineffective assistance of trial counsel.

[C]ounsel is presumed to be effective.

To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

A failure to satisfy any of the three prongs of this test requires rejection of a claim of ineffective assistance.

*Id.* at 1000 (internal brackets, citations, and quotation marks omitted).

Appellant's first two claims specifically allege ineffective assistance of trial counsel for failure to call certain witnesses – Eric Michael Livering, Racheal Pilkington, Christine Shaw, and Samantha Santiago.

> In establishing whether defense counsel was ineffective for failing to call witnesses, Appellant must [still] prove (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Id.* at 998 (internal brackets omitted) (quoting ***Commonwealth v. Treiber***, 121 A.3d 435, 463-64 (Pa. 2015)). Appellant has failed to allege, let alone prove, that Livering was available or willing to testify for the defense. ***See*** Appellant's Brief at 15-18. Likewise, he has failed to plead or to prove that Pilkington, Shaw, or Santiago were willing to testify for the defense. ***See id.*** at 18-21. For example, none of these four potential witnesses provided affidavits establishing that they were willing to testify for the defense, and none of them were called to testify at the PCRA hearing. Accordingly, Appellant has not established that trial counsel was ineffective for failing to call these four witnesses. ***Medina***, 209 A.3d at 998.

Next, Appellant contends that trial counsel was ineffective for failing to request a new preliminary hearing after Appellant initially waived said hearing in the belief that he would be transferred from Lebanon County Prison to Lancaster County Prison if he agreed to the waiver. Appellant's Brief at 21-22. However, in order to establish ineffectiveness, Appellant must establish "that there was a reasonable probability of a different outcome if not for

counsel's error." **Medina**, 209 A.3d at 1000. Appellant fails to establish how having a preliminary hearing would have resulted in a different outcome at his trial, such as not guilty verdicts on any or all of the charges. **See** Appellant's Brief at 21-24. For that reason, Appellant is unable to establish the prejudice prong of the ineffectiveness test, **id.**, and, as he cannot satisfy one prong, the entire ineffectiveness claim fails. **Medina**, 209 A.3d at 1000.

Appellant next maintains that trial counsel was ineffective for failing to file a petition for writ of *habeas corpus* "to attack the Commonwealth's establishment of a prima facie case." Appellant's Brief at 24. This Court has already reviewed the evidence and found it sufficient to support Appellant's convictions beyond a reasonable doubt on all counts. **See generally Maldonado**, No. 1504 MDA 2016. A preliminary hearing has a lower burden of proof of probable cause. **Commonwealth v. McBride**, 595 A.2d 589, 592 (Pa. 1991) ("A judge at a preliminary hearing is not required, nor is he authorized to determine the guilt or innocence of an accused; his sole function is to determine whether probable cause exists to require an accused to stand trial on the charges contained in the complaint."); **Commonwealth v. Marti**, 779 A.3d 1177, 1180 (Pa. Super. 2001) ("[t]he Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged"; "the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense"). Appellant points to no evidence presented by the Commonwealth at trial that

was different than what it would have presented at a preliminary hearing. This evidence satisfied the burden of proof of beyond a reasonable doubt; *ergo*, it would have fulfilled the lower burden of proof of probable cause at a preliminary hearing. Hence, no purpose would have been served by trial counsel filing a petition for writ of *habeas corpus*, and the underlying legal claim thereby lacks arguable merit. Again, as Appellant cannot satisfy one prong of the ineffectiveness test, this entire ineffectiveness claim fails. *Medina*, 209 A.3d at 1000.

Appellant further contends that trial counsel was ineffective, because he "asked the [trial c]ourt to include the offense of Involuntary Manslaughter." Appellant's Brief at 27. "Appellant avers that he was severely prejudiced when the charge of Involuntary Manslaughter was added at the end, as the Jury would now believe that he was guilty of Involuntary Manslaughter." *Id.* at 28. Appellant's argument is nonsensical. A jury found that the evidence was sufficient to convict Appellant of DDRD, a felony of the first degree; trial counsel's request for a charge of involuntary manslaughter was made in an attempt to persuade the jury that he should be convicted of a lesser crime, as involuntary manslaughter was charged as only a felony of the second degree. Additionally, Appellant was not sentenced for involuntary manslaughter and hence is not prejudiced by this conviction. This challenge thereby merits no relief.

Appellant next argues that he was denied his constitutionally guaranteed right to effective representation when . . . [trial counsel] failed to

have confidential face-to-face communication with [Appellant] while preparing for trial [and] . . . only one time did he have a very brief phone conversation with him pertaining to housing." Appellant's Brief at 29-30. After a thorough review of the record, the briefs of the parties, the applicable law, and the PCRA court opinion, we conclude that this challenge merits no relief. The PCRA court opinion properly discusses and disposes of that question:

> We find no ineffectiveness on the part of [t]rial [c]ounsel in this regard. Trial [c]ounsel testified that he personally met with [Appellant] and the two exchanged numerous written correspondence in which [Appellant] was able to express his wishes regarding his defense and [t]rial [c]ounsel was able to provide answers to [Appellant]'s questions. Although [Appellant] may have desired more face-to-face time with [t]rial [c]ounsel, we believe the two had established an effective line of communication and were able to fully prepare the defense strategy prior to trial. Thus, we find no basis for collateral relief.

PCRA Court Opinion, dated December 13, 2019, at 21; *see also id.* at 20 (citing N.T., 5/16/2019, at 76).

Appellant further asserts that he "was denied his constitutionally guaranteed right to effective representation when . . . [trial counsel] failed to properly cross-examine Tiffany Hoover regarding the numerous variations of her story." Appellant's Brief at 32. Appellant alleges that he "ask[ed trial counsel] to ask Tiffany Hoover various questions pertaining to her numerous stories and statements, but he never asked [her] any of those questions[,]" even though trial counsel later "testified at the PCRA [h]earing that it would have been useful to go through the different variations of Tiffany Hoover's testimony." *Id.* at 32-33 (citing N.T, 5/16/2019, at 91).

However, we agree with the PCRA court's observation that Appellant "does not divulge to us what specific questions he feels [t]rial [c]ounsel should have asked of Hoover." PCRA Court Opinion, dated December 13, 2019, at 22.[9] Moreover,

> [trial counsel's] questioning exposed [Hoover's] motives for testifying for the Commonwealth, impeached her credibility by reference to prior statements, noted her intention to trade sex for drugs on the night of this incident, discussed charges filed against her for using drugs in prison, and established that she had other drug sources besides [Appellant]. He asked her at length about her pending criminal charges, including an action involving [DDRD] charges for [the victim]'s death. Hoover admitted that her three pending cases had all been delayed pending her testimony in this action and she admitted that she had initially lied and left out significant details when questioned about this incident by the police, having given three different versions of [w]hat had transpired on the night of [the victim]'s death.

*Id.* at 21-22; *see* N.T., 8/3/2016, at 29-33, 36, 38-39. Like the PCRA court, "we fail to see what more he could have asked to impeach her testimony." PCRA Court Opinion, dated December 13, 2019, at 22. Ergo, Appellant's underlying claim lacks arguable merit, and, since Appellant has failed to establish this one prong of the ineffectiveness test, his entire claim that trial counsel was ineffective for failing to cross-examine Hoover properly likewise fails. *Medina*, 209 A.3d at 1000.

_____

[9] Not only did Appellant not submit any questions to the trial court, but Appellant did not provide any of these alleged questions in his appellate brief, either. *See* Appellant's Brief at 32-34.

Appellant furthermore urges this Court to find that trial counsel was ineffective for "failing to obtain the [m]otel surveillance video and taxi records to prove that Appellant was not present at the [m]otel when the drugs were given to the victim that resulted in his death." Appellant's Brief at 34.[10] Additionally, he now alleges that "the victim passed away . . . prior to Appellant's arrival at the [m]otel, and the taxicab records that prove that fact." *Id.* at 36. He continues: "In addition, although Appellant had the taxicab records from his discovery packet, [trial counsel] failed to review them and use them at trial even though Appellant requested that he do so." *Id.* at 35-36.

As noted above, trial counsel "questioned Detective Walton about the existence of any videos and Detective Walton . . . testified that he did not believe the [m]otel had any cameras." PCRA Court Opinion, dated December 13, 2019, at 23. In fact, Appellant has provided no evidence "that the motel had any surveillance cameras or that any footage of the night of this incident was ever in existence. If such footage was ever in existence, it is unlikely that it would still be available a year later when [t]rial [c]ounsel was appointed to the case." *Id.*; *see also* Order of Court, 5/3/2015.

_____

[10] We note that DDRD does not require the provider's actual presence when the victim consumes the drugs or dies as a result of consumption. 18 Pa.C.S. § 2506(a) ("A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.").

Appellant's underlying legal claim therefore relies entirely upon the taxi cab records. **See** Appellant's Brief at 35-36. Thus, in order to determine whether this underlying legal claim has arguable merit, we would need to review those records. However, they are not in the certified record; in fact, no exhibits from any of Appellant's hearings or his trial appear in the certified record.

> Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. . . . [T]he ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts.

**Commonwealth v. Holston**, 211 A.3d 1264, 1276 (Pa. Super. 2019) (quoting **Commonwealth v. Bongiorno**, 905 A.2d 998, 1000-1001 (Pa. Super. 2006) (*en banc*)). By failing to ensure that the taxi cab records were in the certified record, Appellant has precluded us from determining whether the underlying legal claim has arguable merit. As he has failed to establish this one prong of the ineffectiveness test, his entire ineffectiveness claim based on the taxi cab records fails. **Medina**, 209 A.3d at 1000.

Appellant's antepenultimate claim of ineffective assistance of trial counsel is that counsel "failed to obtain the victim's phone records to prove that he was contacting other drug dealers on the night in question." Appellant's Brief at 37. The victim's telephone records do not appear in the certified record; nevertheless, assuming that they did and that they showed that the victim called other drug dealers on the night of his death, such

evidence would still not establish that Appellant did not deliver the fatal dose. Moreover, Hoover explicitly testified that the bag that she injected into the victim immediately before he became sick and lethargic came from Appellant, and no evidence to the contrary was presented. *Maldonado*, No. 1504 MDA 2016, at 2-3 (citing N.T., 8/3/2016, at 22, 24-25). For this reason, Appellant has failed to establish that the outcome of his trial would have changed had trial counsel obtained the victim's telephone records and thus failed to establish the prejudice prong of the ineffectiveness test, and, without this one prong, this entire claim fails. *Medina*, 209 A.3d at 1000.

In his penultimate claim, Appellant believes that trial counsel was ineffective for failing to file a motion to suppress the victim's telephone records. Appellant's Brief at 40-41. In this Court's review of the sufficiency of the evidence on direct appeal, we made no mention of the victim's phone records. *Maldonado*, No. 1504 MDA 2016, at 9-11. This Court relied upon Hoover's and Sell's testimony, as well as the stipulation that the victim died of mixed toxicity. *Id.* (citing N.T., 8/3/2016, at 18-25, 68, 89-95, 105, 108). Thus, even without the victim's telephone records, the evidence was sufficient for the jury to find Appellant guilty, and, therefore, Appellant cannot show that there was a reasonable probability of a different outcome and, hence, cannot demonstrate prejudice. *Medina*, 209 A.3d at 1000. Once again, without this one prong of the ineffectiveness test, the entire claim fails.

Finally, Appellant maintains that trial counsel had a conflict of interest, because counsel had "cross-examined Appellant in a previous case where

Appellant was a Commonwealth witness."  Appellant's Brief at 12.  "Because this case involves successive and not dual representation, appellant must demonstrate he was prejudiced by any potential conflict of interest." ***Commonwealth v. Cousar***, 154 A.3d 287, 310–11 (Pa. 2017).  "Appellant avers that [t]rial [c]ounsel might have represented him more effectively had he not already had the opportunity to form an opinion about Appellant when he questioned him as a witness in a separate trial."  Appellant's Brief at 14.  However, Appellant fails to explain how trial counsel could have represented him more effectively, and all of the claims of ineffectiveness that we reviewed above were meritless. We therefore find that Appellant has failed to demonstrate that he was prejudiced by any potential conflict of interest, and this final issue merits no relief.

For the reasons given above, we conclude that Appellant's issues raised on appeal are waived or meritless.  Having discerned no error of law, we affirm the order below.  ***See Medina***, 209 A.3d at 996.

Order affirmed.

Judge Murray joins the Memorandum.

Judge Olson Concurs in the Result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/23/2020