J-A26020-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MELISSA DICICCO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN SCOTT | : | No. 934 EDA 2021 |

Appeal from the Order Entered April 16, 2021
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No: 0C2000647

| | | |
|---|---|---|
| MELISSA DICICCO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SEAN SCOTT | : | No. 1383 EDA 2021 |

Appeal from the Order Entered June 10, 2021
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No: 0C2000647

BEFORE: BOWES, J., STABILE, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.: **FILED FEBRUARY 2, 2022**

Melissa Di Cicco ("Mother") appeals the orders entered April 16, 2021, and June 10, 2021, which awarded shared legal and physical custody of her son, M.D.-S. ("Child"), born in June 2017, to his father, Sean Scott ("Father"). Mother challenges the portions of the orders awarding additional vacation time with Child to Father during the summer of 2021. After review, we affirm the

April 16, 2021 order but vacate the June 10, 2021 order, which the trial court lacked jurisdiction to enter.

Mother and Father were never married but resided together from 2016 until 2020, along with Child and Child's half-siblings, who are Mother's children from a prior relationship. The precise circumstances surrounding the parties' separation are a source of disagreement in this case, but it is undisputed that Mother left the parties' home, of which she was the sole owner, in June 2020. Mother then traveled with Child to South Carolina, where Child's half-siblings were visiting Child's maternal grandmother. Mother, Child, and Child's half-siblings remained in South Carolina, and Father remained in the home Mother owned. Father had no in-person contact with Child during this time but was able to speak to Child on the phone.

On July 8, 2020, Mother filed a complaint, requesting shared legal and primary physical custody of Child. Father filed a petition for emergency relief on July 17, 2020, averring Mother had "relocated" to South Carolina without his consent. He further requested that Mother return Child to Pennsylvania, and that the parties receive shared legal and physical custody.

The trial court held a hearing on Father's petition for emergency relief on July 20, 2020. In relevant part, the parties testified that Father was still living in Mother's home without permission and had changed the locks. Father testified that he had been staying in the home because Mother had "not agreed to any type of custody, hasn't said when she's coming back, and is really not giving me information on what she's doing with our son." N.T., 7/20/20, at

- 2 -

11. Mother explained that she planned to return to Pennsylvania with Child as soon as Father left her home. *Id.* at 26. That same day, the court entered an order denying Father's petition for emergency relief and creating an interim custody schedule. The order directed that Mother return to Pennsylvania with Child by August 15, 2020, and that, upon their return, Father would exercise partial physical custody of Child every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m.[1] Mother complied, returning to Pennsylvania with Child, and Father left Mother's home.

On September 16, 2020, Father filed a petition for expedited relief, in which he averred that Mother had unilaterally changed Child's daycare/school despite lacking sole legal custody. Father requested that the trial court direct Mother to return Child to his prior daycare/school and clarify that the parties exercise shared legal custody, since the court did not mention legal custody in its July 20, 2020 order. Father also filed an answer to Mother's custody complaint and a counterclaim on September 18, 2020, requesting shared legal and physical custody of Child.

Mother filed a petition for special relief on October 19, 2020, responding to Father's petition for expedited relief. Mother averred she had not enrolled Child in a new daycare/school at the time Father filed his petition, but that

_____

[1] For reasons that are unclear, two versions of the order appear in the record. One version, which only appears attached to pleadings, includes an additional provision directing that Father would "have dinner . . . at least once a week" with Child during the weeks that he did not otherwise exercise custody. Order, 7/20/20, at 1.

- 3 -

she did so later because she knew the trial court would not make an immediate decision regarding schooling and had no "other viable option[.]" Petition for Special Relief, 10/19/20, at 3-4. Mother requested that the court award her sole legal custody and permit Child to remain at his new daycare/school. On November 2, 2020, Father filed an amended complaint, also requesting sole legal custody. He based this request on Mother's alleged uncooperativeness, as demonstrated by her unilateral daycare/school decision, and on her alleged failure to negotiate the resolution of the custody dispute in good faith.

The trial court conducted a full custody hearing on November 10, 2020. Relevantly, the parties testified regarding Mother's decision to travel to South Carolina with Child and how Child was faring under the July 20, 2020 interim custody order. Mother testified that Father provided inadequate supervision for Child while the parties were living together, resulting in safety concerns, and that he yelled at her and Child and used profanity. N.T., 11/10/20, at 24-26. Mother described an exchange during which she informed Father that he "was scaring" her, and he replied that she "should be scared."[2] *Id.* at 26. She stated that she decided to separate from Father because she was unable to work from home effectively during the COVID-19 pandemic due to Father's inadequate supervision, which forced her to "keep coming back and forth,

---

[2] Mother testified at a later hearing that this exchange occurred in 2018. N.T., 4/1/21, at 17.

going up and down the stairs," to make sure Child was safe.[3]  *Id.* at 28-30, 38-42.  Regarding the interim custody schedule, Mother testified that Child sometimes returned from Father's custody hungry, had trouble falling asleep, or had night terrors.  *Id.* at 23.

Father countered that he has been involved in caring for and supervising Child since birth, which included serving as Child's primary caretaker during the summers of 2018 and 2019.  *Id.* at 81-82.  Further, he discussed instances when he had adjusted his parenting practices at Mother's request.  *Id.* at 117-18.  Turning to the circumstances leading up to the parties' separation, Father testified that Mother had expressed concern it was difficult to work from home during the COVID-19 pandemic because it was "noisy," and that she was afraid she would lose her job.  *Id.* at 94.  Mother proposed enrolling Child in daycare, but Father insisted on waiting until two weeks after the daycare had reopened to ensure it was operating according to COVID-19 safety protocols.  *Id.*  Father explained this disagreement culminated in an incident during which Mother attempted to enroll Child in daycare without his permission, and he followed Mother to the daycare to prevent the enrollment.  *Id.* at 95.  Mother's attempt proved unsuccessful because the daycare would not enroll Child without the permission of both parents.  *Id.* at 96.  Father recalled that Mother informed him two days later she would be taking Child to visit a friend but then traveled

---

[3] Father is employed at a school and has summers off.  N.T., 11/10/20, at 80. Accordingly, Mother relied on Father to supervise Child during the summer of 2020 while she was working from home.  *Id.* at 24-30.

to South Carolina instead. *Id.* at 95-97. As for the interim custody schedule, Father denied that Child had been exhibiting excessive or unusual behavioral issues, suggesting he was merely "a three[-]year[-]old boy" who sometimes "doesn't want to do exactly what you tell him to do." *Id.* at 85.

On November 13, 2020, the trial court entered an order awarding the parties shared legal and physical custody of Child. The order directed Mother would have physical custody of Child from Monday mornings until Wednesday mornings, while Father would have custody from Wednesday mornings until Friday mornings. The order directed the parties would alternate custody each weekend from Friday morning until Monday morning.[4] The order also provided that each party would have two weeks of nonconsecutive vacation with Child each summer, except for the summer of 2021. Father would have five weeks of vacation during the summer of 2021, which he could take consecutively. The order did not include any provision indicating Mother would have vacation with Child during the summer of 2021. Finally, the order provided Child would continue to attend Mother's chosen daycare/school for the rest of the school year, after which the parties would need to reach an agreement regarding Child's schooling. The court entered a separate order that same day detailing its findings of fact.

---

[4] The order explained that morning custody exchanges would occur either at "the time that school, daycare, or camp would normally begin on the day of the transition or if the child is not in school or camp then at transfer [*sic*] shall be at 9:00 a.m." Order, 11/13/20, at 2.

- 6 -

Mother timely filed a notice of appeal on December 4, 2020, along with a concise statement of errors complained of on appeal. Mother also filed a motion for reconsideration on December 4, 2020, in which she averred the trial court erred and abused its discretion by failing to place adequate weight on certain alleged facts, misconstruing certain evidence, and awarding Father additional vacation time with Child during the summer of 2021, among other things. The court entered an order on December 9, 2020, expressly granting reconsideration. Father filed an answer to Mother's motion on December 14, 2020, contending that Mother was merely dissatisfied with the court's custody award and attempting to retry the case. Mother filed praecipes to strike her notice of appeal in the trial court on December 15, 2020, and in this Court on January 7, 2021.

Additionally, Mother filed a motion to supplement the record on January 13, 2021. Mother's motion is listed on the docket sheet but does not appear in the record this Court received on appeal, so it is not clear what exactly she wished to supplement the record with. In response to Mother's motion, Father filed an answer on February 7, 2021, and a motion to strike on February 11, 2021. Father contended Mother's motion was an improper motion for post-trial relief and requested that the trial court sanction her. The court heard argument on March 11, 2021, after which it entered an order in response to Mother's motion for reconsideration reopening the record for a supplemental custody hearing. The order also dismissed Mother's motion to supplement,

granted Father's request to strike the motion, and denied Father's request for sanctions.

The supplemental hearing took place on April 1, 2021. In relevant part, Mother endeavored to present evidence that she was fearful of Father at the time she left home and traveled with Child to South Carolina. Mother testified that Father displayed "explosive reaction[s]" during the parties' time together, which included "throwing things," cursing at her, and "breaking items." N.T., 4/1/21, at 13-14. She mentioned instances during which Father "put a hole in the wall[,]" threw a mason jar across the room, and berated her, claiming that she was responsible for his behavior. *Id.* at 14-15. In support of these allegations, Mother presented a copy of a text message that Father sent her in 2019, in which he apologized for "making you guys feel scared" by "yelling and throwing and banging things." *Id.* at 16-17; Exhibit M-3.1.

Father responded by testifying he had never hit Mother or Child. N.T., 4/1/21, at 63-64. He maintained that Mother's allegations did not describe typical behaviors of his, but related to "one off instances years apart" when his "frustration . . . boil[ed] up[.]" *Id.* at 96. Father contended that he acted as the disciplinarian in the parties' relationship, and that Mother "doesn't really like to do discipline at all." *Id.* at 64. He stated he disciplined Child by putting him in timeout and raising his voice. *Id.* at 64-65. Father contrasted this with Mother's style of discipline by presenting text messages from Mother in which she admitted locking Child in his room and "mistreating" her children by "mak[ing] them feel bad[.]" *Id.* at 47-48, 54-55, 69-70, 81-83; Exhibit F-

1.[5]  Father argued both he and Mother had exhibited parenting deficits, and that Mother's habit of "talk[ing] down" to her children was "just as bad and damaging" as "me throwing something and raising my voice[.]"  N.T., 4/1/21, at 83.

On April 16, 2021, the trial court once again entered an order awarding the parties shared legal and physical custody, with terms largely identical to those of the November 13, 2020 order.  Notably, however, the April 16, 2021, order provided that Mother could take two consecutive weeks of vacation during the summer of 2021.  The court further entered two separate orders that same day with findings of fact supporting its decision.  Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal, on May 12, 2021.  This Court assigned Mother's appeal Superior Court docket number 934 EDA 2021.

Importantly, Mother filed an emergency motion for stay pending appeal in the trial court on May 13, 2021, requesting that the court delay enforcement of its 2021 summer vacation schedule.  The court entered an order on June 10, 2021, purporting to grant Mother's motion in part and deny it in part.  In

---

[5] The text message in which Mother admits to "mistreating" her children is not in the record this Court received on appeal.  Nonetheless, it appears Mother's counsel did not object to the message, and the trial court admitted it at the conclusion of the hearing.  N.T., 4/1/21, at 69-70, 97.  Mother included the text message in her reproduced record filed at 1383 EDA 2021, and, as there is no dispute regarding its authenticity, we have considered it.  Reproduced Record (1383 EDA 2021) at 374a; *see Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa. Super. 2019) (*en banc*) (citing *Commonwealth v. Brown*, 52 A.3d 1139, 1145 n.4 (Pa. 2012)).

reality, the court did not order that its summer vacation schedule be stayed but directed that Father could take no more than two weeks of his five weeks of vacation consecutively.[6]  Mother timely filed a second notice of appeal on July 12, 2021,[7, 8] which this Court assigned Superior Court docket number 1383 EDA 2021.  We consolidated Mother's appeals *sua sponte* on August 3, 2021.

_____

[6] Meanwhile, Mother filed an emergency application for stay regarding the summer vacation schedule in this Court on June 9, 2021.  This Court denied Mother's application on June 11, 2021.  Mother filed an emergency application for reconsideration of this Court's order on June 21, 2021, which this Court denied on June 22, 2021.

[7] Father contends Mother's second notice of appeal was untimely.  Father's Brief (934 EDA 2021) at 23.  The thirty-day appeal period ended on July 10, 2021, which was a Saturday.  Accordingly, Mother timely filed her notice of appeal on Monday, July 12, 2021.  **See** Pa.R.A.P. 903, Note (observing that our Rules of Appellate Procedure incorporate 1 Pa.C.S. § 1908, "relating to . . . the omission of the last day of a time period which falls on Saturday, Sunday or legal holiday.").

[8] The record does not contain a copy of a concise statement filed with Mother's second notice of appeal as our Rules of Appellate Procedure require.  **See** Pa.R.A.P. 1925(a)(2)(i) ("In a children's fast track appeal . . . [t]he concise statement of errors complained of on appeal shall be filed and served with the notice of appeal.").  The docket sheet indicates, curiously, that Mother filed a concise statement on June 12, 2021, a month before her notice of appeal. Regardless, even if Mother failed to file a concise statement, her failure would not warrant quashing or dismissing this appeal, as it did not cause prejudice. **See In re K.T.E.L.**, 983 A.2d 745, 747-48 (Pa. Super. 2009) (holding, "the failure of an appellant in a children's fast track case to file contemporaneously a concise statement with the notice of appeal . . . will result in a defective notice of appeal[,]" with the disposition of the defective appeal to be decided on a case by case basis, and declining to quash or dismiss the appeal in that case because there was no prejudice).

- 10 -

Mother's appeals present interrelated challenges to the portions of the April 16, 2021, and June 10, 2021 orders awarding Father additional vacation time with Child during the summer of 2021. Before discussing the merits of Mother's appeals, we must address two preliminary issues: (1) whether both appeals are moot given that the summer of 2021 has already ended and (2) whether the trial court had jurisdiction to enter the June 10, 2021 order after Mother had filed a notice of appeal.

First, we consider whether Mother's appeals are moot, an issue which the parties address in their briefs filed at both Superior Court docket numbers. As we have explained, "an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. . . . An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **In re D.A.**, 801 A.2d 614, 616 (Pa. Super. 2002) (citations and quotation marks omitted). This general rule is subject to several exceptions. Relevant to this appeal, we may decide an otherwise moot issue if it is "capable of repetition and apt to elude appellate review[.]" **Id.** (citations omitted).

While it is true that the summer of 2021 is already over, and we could not enter an order awarding Mother increased custody during the summer of 2021 even if we agreed with her arguments, we conclude that we may review these appeals. The appeals present an issue that is capable of repetition, as the trial court might enter another unequal award of summer vacation time in the future. Further, because the court may enter its summer vacation award

shortly before the summer begins, and because of the time it takes for an appeal to proceed to its conclusion, the issue is apt to evade appellate review. We conclude, therefore, that these appeals meet an exception to the mootness doctrine, and that we need not dismiss them.

We next consider whether the trial court possessed jurisdiction to enter the order of June 10, 2021. The parties debate this issue in their briefs filed at 1383 EDA 2021. Our Rules of Appellate Procedure provide that a trial court may not generally "proceed further" in a case once a party has filed a notice of appeal. Pa.R.A.P. 1701(a). There are various exceptions to this rule, which include the following:

> **(b) Authority of a trial court or other government unit after appeal.**--After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:
>
> (1) Take such action as may be necessary to preserve the *status quo*, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed, and transmitted, grant leave to appeal *in forma pauperis*, grant *supersedeas*, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.
>
> (2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.
>
> (3) Grant reconsideration of the order which is the subject of the appeal or petition . . . .
>
> ***
>
> (4) Authorize the taking of depositions or the preservation of testimony where required in the interest of justice.
>
> (5) Take any action directed or authorized by an appellate court.

(6) Proceed further in any matter in which a non-appealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.

**(c) Limited to matters in dispute.**--Where only a particular item, claim, or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim, or assessment, unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

Pa.R.A.P. 1701(b)-(c).

Here, the trial court entered its order of June 10, 2021, in response to Mother's motion requesting a stay pending appeal of the April 16, 2021 order. While the court purported to grant Mother's motion in part and deny it in part, the order did not grant a stay. Instead, the order slightly amended the prior order of April 16, 2021, by indicating that Father could take no more than two weeks of his five weeks of vacation during the summer of 2021 consecutively. This was a substantive change to the prior order made after Mother filed her notice of appeal, relating to the same issue that Mother was appealing, at a time when no modification petition was pending. Thus, none of the exceptions enumerated in Rule 1701 were applicable, and the court lacked jurisdiction to enter the June 10, 2021 order, on appeal at 1383 EDA 2021. We vacate that order and limit our review to the April 16, 2021 order on appeal at 934 EDA 2021. *See **Mumma v. Boswell**, **Tintner**, **Piccola & Wickersham**, 937 A.2d 459, 465-66 (Pa. Super. 2007), *reargument denied* (Jan. 10, 2008), *appeal*

*denied*, 960 A.2d 456 (Pa. 2008) (vacating the trial court's order because the court was without jurisdiction to enter it pursuant to Pa.R.A.P. 1701(a)).

Mother raises the following issues for our review in her brief filed at 934 EDA 2021:[9]

> 1. Did the trial court err and abuse its discretion when it granted Father five weeks of exclusive custody in summer 2021—which translates to Father having 61 days of custody to Mother's 16 days, where that grant cannot be reconciled with the trial court's instruction that "the parties shall have **shared** physical custody," (emphasis supplied) in the best interests of the minor child, or the conclusion that the five weeks when Father did not have custody in summer 2020 was "to the detriment of the child's stability[?]"
>
> 2. Did the trial court err and abuse its discretion by entering an Order that punished Mother—not based on consideration of what was "in the best interests" of the 4[-]year-old child—where its Order is inconsistent with the trial court's Order of July 20, 2020, that Mother had primary physical custody and would return to Philadelphia August 15, 2020, based on Father's representation that he would vacate Mother's house on August 14?
>
> 3. Did the trial court err and abuse its discretion in rejecting, on the grounds of "credibility," all of Mother's testimony about verbal and physical intimidation by Father, her fear for personal safety, and anxiety about her job, while disregarding the documentary evidence that corroborated Mother's testimony?

Mother's Brief (934 EDA 2021) at 3-4 (suggested answers omitted).

We review the custody order pursuant to an abuse of discretion standard of review. ***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (quoting ***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012)). This Court must defer

---

[9] Mother filed a separate brief for each of her two appeals. Because we vacate the order on appeal at 1383 EDA 2021 and limit our review to the order on appeal at 934 EDA 2021, we focus on Mother's brief filed at 934 EDA 2021 when considering the merits of her claims.

to the trial court's credibility and weight of the evidence determinations, as the court was able to view and assess the witnesses' testimony firsthand. *Id.* We must accept the court's factual findings if the record supports them, but we need not accept the court's deductions or inferences from its findings. *Id.*

When entering a custody order, the trial court must base its decision on the child's best interests. ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that courts must consider when ordering custody are set forth at 23 Pa.C.S.A. § 5328(a), as follows:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Upon review of Mother's brief, we observe she includes three claims in her statement of questions involved but then divides her argument into eight sections, one of which she divides into two subsections.  This presentation of Mother's claims violates Pa.R.A.P. 2119(a), which directs that the argument section of an appellate brief "shall be divided into as many parts as there are

questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein[.]" Because Mother's noncompliance is not a substantial defect, however, and does not hinder our ability to conduct appellate review, we decline to dismiss the appeal, and we address the merits of Mother's claims. *See* Pa.R.A.P. 2101 ("[I]f the defects are in the brief . . . of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 584 (Pa. Super. 2014) ("When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").[10]

_____

[10] Father argues this Court should dismiss Mother's appeal because she raises arguments she did not preserve in her concise statement and attempts to add new evidence to the case by including two exhibits in her brief and reproduced record that the trial court did not admit at the hearings. Father's Brief (934 EDA 2021) at 16-22. Contrary to Father's contentions, our review indicates that Mother sufficiently preserved the arguments she raises on appeal in her concise statement. As for the disputed exhibits, Mother explains that the first exhibit, included in her brief, was a "demonstrative schedule" displaying the alleged inequity of the court's 2021 summer vacation award. Mother's Reply Brief (934 EDA 2021) at 5-6. She explains she included the second exhibit, which was a therapist's note, with her reproduced record because she believed the court sustained an objection to it in error, but later chose not to raise that issue on appeal. *Id.* at 6 n.3; *see* N.T., 4/1/21, at 32-33.

Regarding the demonstrative schedule, we are satisfied Mother did not include it in her brief as a means of introducing new facts into the record, but as a graphical representation of the trial court's 2021 summer vacation award, the substance of which is in the record and undisputed. As a result, we see no reason to exclude the schedule from our review. We agree with Father, conversely, that it was improper for Mother to include a therapist's note that the trial court did not admit into evidence in her reproduced record, and we

*(Footnote Continued Next Page)*

- 17 -

As we explained in our summary of the procedural history of this case, the trial court entered three orders on April 16, 2021, which included the order on appeal, as well as two orders containing its findings of fact. The court also issued an opinion in response to Mother's concise statement. Relevant to our analysis here, the court set forth its assessment of the 23 Pa.C.S.A. § 5328(a) factors in its orders and concluded, based on its assessment, that an award of shared legal and physical custody would be in Child's best interest.

Significantly, the trial court found that Father was the parent more likely to encourage contact between Child and the other parent pursuant to Section 5328(a)(1). The court based this finding on Mother's lengthy trip to South Carolina, during which Father had no in-person contact with Child, and on her contention during her testimony that Father should not have custody of Child for long periods of time. Order (Findings in Support of Order), 4/16/21, at 3-4.

The trial court further found that Mother's attempt to characterize Father as abusive lacked credibility. *Id.* at 4-6. The court explained Mother's reasons for traveling to South Carolina changed over time, with her initial testimony

_____

have not considered that note when rendering our decision in this case. **See Brown v. Everett Cash Mutual Insurance Company**, 157 A.3d 958, 965 n.6 (Pa. Super. 2017) (observing this Court cannot consider material from outside the original record when rendering its decision). While Mother should not have included the note, we do not find this minor transgression warrants the complete dismissal of her appeal. **See** Pa.R.A.P. 2101; **Krauss**, 104 A.3d at 584.

on November 10, 2020, focusing on her concern that she might lose her job and her testimony on April 1, 2021, suggesting she was fleeing Father out of fear. *Id.* at 4-6. The court observed that Mother's allegations of abuse as to Child were minor; that it was undisputed Father had never hit, attempted to hit, or threatened to hit Mother; and that Mother never called the police or involved the child welfare agency due to alleged abuse. *Id.* at 5. The court similarly rejected Mother's assertion that Father provided poor supervision for Child, observing that she continued to place Child in his care after incidents of alleged negligent supervision occurred. *Id.* at 5. Regarding Mother's motive for traveling to South Carolina, the court found that Mother left her residence because Father refused to move out and "the parties engaged in a tit for tat where Father refused to move out . . . until the parties reached an agreement for a custody schedule and Mother withheld physical custody of the child from Father until he moved out[.]" *Id.* at 4 (unnecessary capitalization omitted).

In addition, the trial court emphasized Child's need for stability pursuant to Section 5328(a)(4) and found that Mother contributed to the destabilization of Child's life by traveling with him to South Carolina and unilaterally enrolling him in a new daycare/school after returning to Pennsylvania. Order (Findings in Support of Order Continued), 4/16/21, at 1-2. The court tied its award of an expanded summer vacation schedule for Father in 2021 to Child's need for stability, explaining:

> Father has more availability in the summer due to his work schedule as an instructional aide in special education . . . . Father

has typically been the primary caregiver of Child in the summers and at times was a caregiver for Mother's two other children from a prior relationship when they are not in camp.

Since Father has been the primary caregiver of Child in the summers for his life until 2020, when Mother took the child to South Carolina during the 2020 summer months, it is in the child's best interests to spend extended time with Father in the summer of 2021. Until 2020, it had always been the child's experience to spend his summer with Father and this will provide stability for the child. Father does not work in the summer and has more availability to care for the child during that time. It will also mean for the summer of 2021, the parties may not need childcare. The child will be too young for[]many camp options other than daycare in 2021 and spending the majority of these weeks with Father, as he always had prior to the summer of 2020, will be in his best interests. Going forward for the summers of 2022 and beyond, the parties should work together to make decisions about camp enrollment and to determine a summer custody schedule in light of Father's time off from work in the summers.

*Id.* at 5-6 (unnecessary capitalization omitted).

In her issues combined, Mother attempts to undermine the trial court's factual findings. Mother contends the trial court indicated its intent to award the parties shared physical custody in Child's best interest but then awarded Father an expanded vacation schedule during the summer of 2021, which did not equate to shared physical custody and was not in Child's best interest. Mother's Brief (934 EDA 2021) at 18-20. Mother contends the court failed to articulate how this unequal schedule was in Child's best interest, and that the schedule was contrary to Child's best interests because it was detrimental to his stability. *Id.* at 19-20, 41-44.

Mother further presents argument as to Father's alleged aggression and threatening behavior. She asserts Father yelled and cursed while the parties

lived together, and that he played violent video games in front of Child. *Id.* at 28-30. Mother insists she traveled to South Carolina out of fear of Father. *Id.* at 33-37. Moreover, she asserts that Father refused to leave the parties' former home, which she owned, and endangered her job by failing to provide proper supervision of Child, which made it impossible for her to work from home during the COVID-19 pandemic. *Id.* at 25-37. Mother criticizes Father's parenting of Child and argues spending time with Father exacerbates Child's behavioral issues. *Id.* at 22-28.

In addition, Mother challenges the trial court's finding that Father was the parent more likely to encourage contact between Child and the other parent pursuant to Section 5328(a)(1). Mother insists Father "imposed" the unequal 2021 summer schedule on her, which shows his lack of interest in encouraging her contact with Child. *Id.* at 21. Mother also insists that Father caused her to travel to South Carolina and remain there for as long as she did, because he delayed in leaving her home. *Id.* Relatedly, Mother contends she did not "relocate" to South Carolina, as the child custody statute defines that term,[11] but was waiting to return to Pennsylvania until Father left her home, which she was permitted to do under the July 20, 2020 order. *Id.* at 37-40. She argues Father mischaracterized the nature of her trip. *Id.*

---

[11] The child custody statute defines "Relocation" as "[a] change in a residence of the child which significantly impairs the ability of a nonrelocating party to exercise custodial rights." 23 Pa.C.S.A. § 5322(a).

After careful review, we find no merit to Mother's claims. While Mother endeavors to present the trial court's award of additional summer vacation to Father in 2021 as inconsistent with its conclusion that shared physical custody would be in Child's best interest, the effect of this award was that Father and Child were able to make up for lost time resulting from Mother's trip to South Carolina and Father's interim award of only partial physical custody in the July 20, 2020, order, which limited his time with Child for several months until the court entered its order of November 13, 2020. If anything, awarding equal summer vacations in 2021 would be contrary to the court's shared physical custody award, because it would result in Child spending far less time with Father than with Mother over 2020 and 2021. It was also reasonable for the court to conclude that additional time with Father during the summer of 2021 would provide Child greater stability while transitioning into an equally shared summer schedule going forward, as Child historically spent his summers with Father.

Regarding Mother's allegations of aggressive and threatening behavior by Father, it was within the trial court's discretion to reject these allegations as incredible. *V.B.*, 55 A.3d at 1197. Mother insists it was improper for the court to reject her allegations on credibility grounds because her testimony was "unrebutted," and she proposes the court viewed the case merely as "a contest . . . based on which parent it found to be more 'credible[.]'" Mother's Brief (934 EDA 2021) at 35-36, 40-43. Mother is incorrect, as Father did rebut

her allegations of aggressive behavior, denying he ever hit Mother or Child, and contending Mother's allegations related to a limited number of instances "years apart" during which he threw things and raised his voice. N.T., 4/1/21, at 63-64, 83, 96. Even if Father had not rebutted these allegations, our law permits a trial court to reject uncontroverted testimony on credibility grounds, with the caveat that it may not do so arbitrarily. **McElwee v. Southeastern Pennsylvania Transp. Authority**, 948 A.2d 762, 774 n.10 (Pa. 2008). We could not conclude the court's rejection of Mother's testimony was arbitrary in this case, as it provided a thorough explanation of its credibility determination, summarized above.

Finally, the record supports the trial court's conclusion that Father is the parent more likely to encourage contact between Child and the other parent pursuant to Section 5328(a)(1). As the court observed, Mother traveled with Child to South Carolina, resulting in Father having no in-person contact with Child for nearly two months. She also contended in her testimony that it was inappropriate for Father to have custody of Child for more than three hours at a time. Mother testified, in relevant part, "I'm extremely concerned over any amount of time more than three hours. . . . That is what's best for [Child] for his father to be there frequently but not just at any length of time." N.T., 11/10/20, at 55-56. The record does not indicate that Father displayed similar hostility to Mother spending time with Child. Finally, while Father may have alleged at the start of the case that Mother "relocated" to South Carolina, the

court did not find that she relocated and did not treat this as a relocation case. We fail to see, therefore, how this provides any reason to disturb the court's custody award.

Based on the foregoing analysis, we conclude that the trial court did not abuse its discretion by awarding Father additional vacation with Child during the summer of 2021, and we affirm the court's April 16, 2021 order on appeal at 934 EDA 2021. Further, because we conclude the court lacked jurisdiction to amend its April 16, 2021 order after Mother filed her notice of appeal, we vacate the court's June 10, 2021 order on appeal at 1383 EDA 2021.

Order on appeal at 934 EDA 2021 affirmed. Order on appeal at 1383 EDA 2021 vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/02/2022