J-S47004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCISCO ORTIZ | : | |
| | : | |
| Appellant | : | No. 2313 EDA 2022 |

Appeal from the Judgment of Sentence Entered June 14, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0002648-2020

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED MAY 7, 2024**

In this direct appeal, Francisco Ortiz (Appellant) seeks review of the judgment of sentence entered by the Court of Common Pleas of Philadelphia County (trial court) following a jury trial where he and his co-defendant (Felix Adorno) were both convicted of first-degree murder and several related offenses.  Appellant was sentenced to a mandatory term of life as to the murder count, and a concurrent aggregate term of 15 to 30 years as to the remaining counts.  He now challenges the sufficiency and weight of the evidence; an instruction allowing the jury to infer an intent to kill based on the unlicensed possession of a firearm; and the admission at trial of the victims' autopsy photos.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

In 2019, Appellant was in a romantic relationship with Hillary Quezada Perez. Previously, Perez had been in a relationship with the victim in this case, Ivan Ortiz, and the two of them had a child who at that time was about one year old. On the evening in question, Appellant, Adorno, and a few of their friends were with Perez at her home. They all became alerted by text messages the victim had sent Perez, stating that he was on his way to her home and that he had her house keys.

Later that night, the victim arrived at Perez's home, and he began walking repeatedly from the front door to the back door, unlocking them, but not going inside. Perez wanted to avoid a confrontation, and she tried to arrange a quiet exit of Appellant and Adorno so that they would have no direct contact with the victim. It was unclear to Perez whether Appellant and Adorno shared her concern, and she saw the two men whispering with each other while the victim was still walking around the house.

At some point, Perez thought the victim had come to the front door. She then walked to that part of the house in order to distract the victim and allow Appellant and Adorno to leave through the back of the home. However, once Perez reached the front door, she realized that the victim was gone. Gunshots were heard coming from the back of the house, and when Perez got there, she discovered that the victim had been shot.

The victim collapsed to the ground and scolded Perez for "choosing" Appellant over him. Perez remained with the victim, and she saw what she believed to be Adorno's vehicle driving away – Appellant and Adorno both left

the house following the gunshots.  Minutes later, Perez flagged down the responding patrol car.

When the police arrived, they observed that the victim had been bleeding profusely from several gunshot wounds.  It appeared that the victim was lucid, and the police spoke with him, asking what had happened.  The victim stated that he was dying, and that he did not know who shot him.  He was soon transported to a hospital, where he later succumbed to his wounds.

Initially, Perez reported to the police that Appellant (but not Adorno) had been at her house at the time that the victim was shot.  She gave a corrected statement about a month later, clarifying that both Appellant and Adorno were present.  No reference to Adorno had been made in Perez's initial statement because she was afraid of mentioning him.

A crime scene unit examined the area where the victim was shot, and it recovered four cartridge casings and two projectiles, all of which were discharged from the same gun, a 9mm Ruger.  The victim himself was also examined, and it was determined that he had been shot a total of five times with a single firearm.  There were bullet wounds in the victim's chest, upper back, and both legs.  The medical examiner identified those wounds as the victim's cause of death.

Appellant and Adorno were arrested a few months after the night of the shooting.  They were each charged with first-degree murder; conspiracy to commit murder, possession of a firearm prohibited; carrying a firearm without a license; carrying a firearm in public; possession of an instrument of crime;

obstructing administration of law or other governmental function; and tampering with or fabricating evidence. A joint jury trial for Appellant and Adorno took place in June 2022.

At the trial, the Commonwealth did not present the testimony of any individuals who witnessed the shooting. However, one witness, Angel Fernandez, testified that Appellant and Adorno both admitted to him that they repeatedly shot the victim with an intent to kill. Fernandez was Appellant's half-brother, as well as the victim's cousin. When Fernandez, Appellant, and Adorno were socializing a day after the shooting, Fernandez asked the other two men about how the shooting had unfolded.

According to Fernandez, he was told by Appellant and Adorno that they had become annoyed at the victim as he kept knocking on the doors of Perez's house. The two men decided to confront the victim, and as they approached, they thought that they saw him holding a weapon.

Adorno then opened fire using a gun (a 9mm Ruger pistol) that he had been carrying. Appellant "came up and finished" the victim after he had already fallen to the ground, using Adorno's gun to continue shooting him. It is undisputed that the victim had in fact not been carrying any weapons at all, as the object he held was only a shovel. Autopsy photos of the victim's wounds were admitted into evidence without any objection by the defense.

The Commonwealth relied on Fernandez's testimony, as well as the physical evidence and circumstances of the victim's death, to establish that Appellant's intent to kill. Further, the trial court read the jury a standard

- 4 -

instruction allowing it to infer an intent to kill where a defendant has used an unlicensed firearm:

> If you find that the defendant used a firearm in committing the murder, the acts constituting the violation of the offense, and that the defendant did not have a license to carry the firearm as required by law, you may regard that as one item of circumstantial evidence on the issue of whether the defendant intended to commit the crime of murder as otherwise charged.

N.T. Trial, 6/13/2022, at 234-35. This instruction was given in accordance with 18 Pa.C.S.A. § 6104, which provides that, "In the trial of a person for committing or attempting to commit a crime enumerated in section 6105 [including first-degree murder] . . . the fact that the person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense." The record does not reflect that the defense ever objected to that instruction.

Ultimately, the jury found Appellant guilty as charged. He filed a post-sentence motion, *inter alia*, challenging the verdict as being contrary to the weight of the evidence, and the motion was denied. Appellant filed a timely notice of appeal, and the trial court submitted an opinion in accordance with Pa.R.A.P. 1925(a), giving its reasons why the judgment of sentence should be affirmed. *See* Trial Court 1925(a) Opinion, 3/6/2023, at 9-24. Appellant now asserts the following four issues in his brief:

> 1. Was there sufficient evidence presented at the trial of [Appellant] to convict him of first-degree murder and related charges, which consisted of totally unsubstantiated suppositions and conjectures and hearsay statements by a polluted source[?]

2. Was the guilty verdict of first-degree murder and related charges contrary to the weight of the evidence in that the scanty evidence presented by the Commonwealth was totally based on surmise conjecture and speculation[?]

3. Did the Honorable Court err in instructing the jury that possession of a firearm without a license would be one item of circumstantial evidence on whether [Appellant] had the intent to commit the charged crime of murder[?]

4. Did the use of colored photographs of the gaping gunshot wounds of the victim have any probative value or where they presented only to enflame the passions of the jury[?]

Appellant's Brief, at 4.

Appellant's first claim is that the evidence was legally insufficient to sustain his convictions because there were no eyewitnesses to the shooting. However, he does not argue any specific grounds as to why the evidence was insufficient. He instead states broadly, and without reference to any particular element of an offense, that none of the evidence identifying him as the shooter was "verified." *See* Appellant's Brief, at 10-11.

We find that Appellant's sufficiency claim is undeveloped and therefore waived. "[O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain 'such discussion and citation of authorities as are deemed pertinent.'" *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (quoting Pa.R.A.P. 2119(a)). "Where an appellate brief failed to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Wirth*, 95 A.3d at 837. With respect to a sufficiency claim, an appellant must preserve the issue by stating "with specificity the

element or elements upon which the appellant alleges the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013).

Regardless of waiver, the evidence was sufficient for the jury to determine that Appellant committed first-degree murder, as well as the related offenses. When reviewing a sufficiency claim, we construe "all the evidence admitted at trial in the light most favorable to the verdict winner," and the evidence is legally sufficient when it would "enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Brockman*, 167 A.3d 29, 38 (Pa. Super. 2017). The Commonwealth may prove an offense by means of wholly circumstantial evidence, and the evidence presented "need not preclude every possibility of innocence." *Id*. It is the job of the finder of fact to pass upon "the credibility of witnesses and the weight of the evidence produced," and the fact-finder "is free to believe all, part or none of the evidence." *Id*.

"There are three elements of first-degree murder: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Jordan*, 65 A.3d 318, 323 (Pa. 2013) (citing 18 Pa.C.S.A. § 2502(a)). "Specific intent as well as malice can be inferred from the use of a deadly weapon upon a vital part of the victim's body." *Jordan*, 65 A.3d at 323. The jury must determine whether the accused had such intent. *See id*.

Viewed in the light most favorable to the Commonwealth, the evidence satisfied each of those elements. It is undisputed that Appellant and Adorno were at Perez's home on the evening that the victim was killed. One of Appellant's relatives, Fernandez, testified at trial that Appellant and Adorno had both admitted to him that they shot the victim, and that Appellant "finished" the victim using Adorno's pistol.

The uncontroverted physical evidence also shows that the victim was shot a total of five times in various parts of his body – more than enough times to incapacitate him even had he been an initial aggressor. Moreover, the jury was permitted to infer Appellant's intent to kill both from the use of a deadly weapon, as well as his unlicensed possession of a firearm. Thus, the evidence was sufficient to sustain the jury's verdict on the murder count, and no relief is due as to Appellant's sufficiency claim.[1]

In his second issue, Appellant contends that the verdict on the murder count is contrary to the weight of the evidence because the limited physical evidence and "conjecture" by the Commonwealth's witnesses did not establish that Appellant had the requisite intent to kill the victim. Appellant again neglects to make a specific legal contention as to how the trial court erred in

---

[1] As to the sufficiency of the evidence on the remaining counts, we adopt the trial court's reasoning in its 1925(a) opinion. *See* Trial Court 1925(a) Opinion, at 11-15.

this regard, resulting in the waiver of the claim.[2]  Even if the claim had not been waived, we would find that it lacks merit for reasons similar to those outlined above in our discussion of evidentiary sufficiency.

In his third issue, Appellant argues that the trial court erred in instructing the jury that it could infer his intent to kill from the unlicensed possession of a firearm.  "A specific and timely objection must be made to preserve a challenge to a particular jury instruction."  *Commonwealth v. Moury*, 992 A.2d 162, 178 (Pa. Super. 2010).  "Failure to do so results in waiver."  *Id*.

Here, Appellant concedes that no objection to this instruction appears in the record, but he nevertheless suggests that one may have been made by his co-defendant's counsel, allowing this Court to reach the merits of the issue. We must decline to do so, however, because of our "established principle that our review is limited to those facts which are contained in the certified record and what is not contained in the certified record does not exist for purposes of our review."  *Commonwealth v. Holston*, 211 A.3d 1264, 1276 (Pa.

_____

[2] "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'"  *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)).  "An allegation [raised in a motion for a new trial] that the verdict is against the weight of the evidence is addressed to the discretion of the trial court."  *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).  A trial court's ruling on such a challenge is reviewed for an abuse of that discretion.  *See id*.

Super. 2019) (internal quotations and citations omitted). The present claim is therefore waived for lack of a contemporaneous objection.[3]

Appellant's fourth and final issue is likewise waived. He argues that the trial court abused its discretion in admitting autopsy photos of the victim because they improperly enflamed the passions of the jury. However, Appellant concedes that no objection was made to the photos' admission. *See Appellant's Brief*, at 16. The lack of a contemporaneous objection to that evidence necessarily results in a waiver of the claim.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2024

---

[3] Regardless, the claim would lack merit. Our Supreme Court has affirmed the legal validity of the instruction where, as here, the jury was informed of the ability to make a permissive inference based on the evidence before it, and the evidence indeed supported such an inference in the case. *See generally Commonwealth v. Hall*, 830 A.2d 537, 549-50 (Pa. 2003).